## SHIMONEK, Adm'x, v. TILLMAN, Assignee.

No. 19168. Opinion Filed June 23, 1931.

Withdrawn, Corrected, and Refiled June 30, 1931.

L. A. Justus, Jr., and Burford, Miley, Hoffman & Burford, for plaintiff in error.

John W. Tillman, Fred A. Tillman, and Welcome D. Pierson, for defendant in error.

CULLISON, J. Plaintiff for his cause of action says:

## "Petition.

"* * * That, on the 7th day of January, 1922, the deceased, Ralph Malone, by and through his legal guardian, A. G. Williams, entered into a written contract with the firm of Tillman & Tillman, attorneys at law, by the terms of which he retained said firm of attorneys to represent his interests in the matter of the estate of Howard Buffalo, deceased. A copy of which contract is hereto attached, made a part hereof and marked 'Exhibit A.'

"That the said Howard Buffalo, deceased, died on the 7th day of July, 1921, leaving a will, by the terms of which he bequeathed his entire estate to Mary McFall, Pearl Buffalo, and Ralph Malone, share and share alike.

"That at the time said Ralph Malone, through his legal guardian, entered into the written contract of employment with the firm of Tillman & Tillman, as set forth above,

there was pending before the Secretary of the Interior, and the county court of Osage county, a contest over the probating of the will of Howard Buffalo, in which contest the heir, Pearl Buffalo, contended that the will executed by Howard Buffalo, prior to his death was obtained by duress, coercion, and fraud, and was not the free and voluntary act of the deceased, Howard Buffalo, and further contended that as she was the closest blood relative, she was entitled to the entire estate, to the exclusion of Ralph Malone and other heirs.

"That prior to the time the firm of Tillman and Tillman entered into the contract of employment with the guardian of Ralph Malone, as set forth above, said firm had for a considerable period of time represented the said Ralph Malone and his legal guardian, and therefore when the contest arose over the will of Howard Buffalo, the said Ralph Malone and his legal guardian entered into the aforesaid contract of employment with the firm of Tillman & Tillman to represent the interests of the said Ralph Malone in these additional legal matters.

"That, in accordance with the terms of their contract, the firm of Tillman & Tillman diligently and carefully represented the interests of Ralph Malone, in all matters pertaining to the estate of Howard Buffalo, deceased, and in the final termination of said litigation recovered from the estate of Howard Buffalo, for the said Ralph Malone, properties and moneys in the value of $111,111.-11 or one-third of the entire estate of Howard Buffalo.

"That, according to the terms of the contract entered into by the firm of Tillman & Tillman, with the said Ralph Malone and his legal guardian, the said Ralph Malone agreed to pay the firm of Tillman & Tillman, as compensation for their services, a sum equivalent to 15 per cent. of the amount recovered by said firm of attorneys, from the estate of Howard Buffalo, for the said Ralph Malone.

"That, on the 3rd day of December, 1924, at a hearing had in the county court of Osage county, the value of the property recovered by the firm of Tillman & Tillman for the said Ralph Malone, from the estate of Howard Buffalo, deceased, was fixed at $111,111.11, and the contract of employment of the firm of Tillman & Tillman with the said Ralph Malone and his legal guardian, was approved by the county court of Osage county, and the guardian ordered to pay to the firm of Tillman & Tillman the sum or $22,666.66 or 15 per cent. of the amount recovered by the firm of Tillman & Tillman, for the said Ralph Malone, from the estate of Howard Buffalo, and further found that of this sum $5,500 had been paid, and that there was due the firm of Tillman & Tillman a balance in the sum of $17,666.66, and the guardian was authorized by said court to pay

the firm of Tillman & Tillman, said balance out of any moneys which might come into his hands as guardian of Ralph Malone. A copy of which order is hereto attached, made a part hereof, and marked 'Exhibit B.'

"That after the entering of said order by the county court of Osage county, the guardian, A. G. Williams, paid the firm of Tillman & Tillman, in accordance with said order, the sum of $2,900, leaving a balance due said firm of attorneys, according to the terms of said contract and court order, in the sum of $14,766.66, of which amount no portion has been paid and is now due and owing.

"That for a good and valuable consideration, the right, title, and interest of the firm of Tillman & Tillman in said indebtedness has been transferred and assigned to this plaintiff as assignee, and authority granted and vested in him by the firm of Tillman & Tillman, to collect same as assignee.

"That, on the 4th day of July, 1926, the said Ralph Malone died, and Dora Shimonek was on the 14th day of July, 1926, appointed administratrix of the estate of Ralph Malone, deceased; that, on the 1st day of November, 1926, and within four months after the appointment of said administratrix, plaintiff filed his claim for the indebtedness set forth above with said administratrix, at which time the said administratrix requested a hearing on said claim, which hearing was held on the 10th day of December, 1926, and the matter taken under advisement by the administratrix and her counsel until the 14th day of February, 1927, at which time said claim was disallowed by her and the county judge of Osage county. * * *'

Defendant, for her answer to plaintiff's petition, says, in part:

## "Answer.

"Comes now the defendant, Dora Shimonek, the duly appointed, qualified and acting administratrix of the estate of Ralph Malone, deceased, and for her answer to the petition of the plaintiff filed herein, states:

"* * * (5) Defendant further specifically denies that said Ralph Malone was ever legally adjudged to be an incompetent person under the laws of the state of Oklahoma, and denies further that said A. G. Williams was ever the legally appointed, qualified, and acting guardian of said Ralph Malone.

"(6) Defendant further states that if said contract was, in fact, executed by said A. G. Williams, that a copy thereof was never served upon the Superintendent of the Osage Indian Agency; and said purported contract was never approved by either the Secretary of the Interior, the Superintendent of the Osage Indian Agency, or the county court of Osage county, Okla., and that said contract is therefore void and of no force and effect.

"(7) Defendant further states that, at the time of the alleged execution of the purport-

180

ed contract set up in plaintiff's petition, said Ralph Malone was a full-blood Osage Indian who did not have a certificate of competency.

"* * * (10) Defendant further states that if the firm of Tillman & Tillman performed any services for said Ralph Malone in the matter of the estate of Howard Buffalo, as set up in the plaintiff's petition, that said firm of Tillman & Tillman has received the sum of $8,450, which said sum is ample compensation for all services rendered by said firm. * * *"

Defendant in error, Fred A. Tillman, assignee, was plaintiff below, Dora Shimonek, administratrix, plaintiff in error, was defendant below. They will be referred to as they appeared below.

Plaintiff bases his action on a contract made and entered into by Ralph Malone, an incompetent, now deceased, through his appointed guardian, A. G. Williams, with the law firm of Tillman & Tillman; the present plaintiff, Fred A. Tillman, being the assignee of said contract.

Some of the salient facts are as follows:

On or about the 5th day of July, 1921, Howard Buffalo, a member of the Osage Tribe of Indians, died leaving a large estate, consisting of approximately three and one-third Osage Indian headrights, together with the rents, royalties, and bonuses accumulating thereon, also certain lands located in Osage county, and approximately $100,000 in cash. He left surviving him, as his sole heir at law, his wife, Pearl Buffalo. A few days prior to his death, the deceased, Howard Buffalo, made and executed a will, leaving his entire estate in equal portions to his wife, Pearl Buffalo, Ralph Malone, and Mary McFall, the last two devisees bearing no relation whatever to the said Howard Buffalo.

On September 1, 1917, Ralph Malone had been declared an incompetent Osage Indian in accordance with the Act of Congress and the laws of the state of Oklahoma, and a general guardian had been appointed to manage and control his estate. Later the original guardian of Ralph Malone resigned, and on January 3, 1922, A. G. Williams was appointed guardian of Ralph Malone.

The will of Howard Buffalo bequeathed more than two-thirds of his entire estate away from his wife, Pearl Buffalo, and devised two-thirds to Ralph Malone and Mary McFall, who bore no relationship whatever to the deceased.

It will be observed that on the 7th day of July, 1921, one Howard Buffalo, an Osage Indian, died, leaving a will by the terms of which he bequeathed his entire estate to Pearl Buffalo, his wife, Mary McFall, and Ralph Malone, share and share alike.

In view of the above and foregoing statement of facts, an action was brought to set aside the will of the said Howard Buffalo.

On January 7, 1922, Ralph Malone, by and through his legal guardian, A. G. Williams, entered into the contract sued on by the terms of which Tillman & Tillman represented Ralph Malone in the action to contest the Howard Buffalo will.

A final hearing and settlement of the Howard Buffalo will contest was had on the 13th day of December, 1924, wherein the defendant Ralph Malone was awarded a one-third interest in the estate of Howard Buffalo, valued at $111,111.11.

The Howard Buffalo contest having been fully settled, the same is not now before this court for consideration.

After the Howard Buffalo litigation had been terminated, A. G. Williams, guardian of Ralph Malone, asked the court to fix the amount of attorney fees due Tillman & Tillman under the terms of their contract with Ralph Malone. The court fixed the amount of the attorney fees at $22,666.66, of which amount a total of $5,500 had been paid said firm of attorneys, leaving a balance due in the sum of $17,666.66, and the court ordered A. G. Williams, guardian, to pay this amount to said firm of attorneys.

The record shows that the guardian of Ralph Malone paid Tillman & Tillman an additional sum of $2,900, leaving the balance of $14,766.66 due Tillman & Tillman. On July 2, 1927, the district court of Osage county, Okla., rendered the following judgment:

"Now, on this 2nd day of July, 1927, this cause coming regularly on for hearing pursuant to adjournment, parties appearing as heretofore set out, the court, after being fully advised, in the premises, find that plaintiff is entitled to judgment from Dora Shimonek, as administratrix of the estate of Ralph Malone, in the sum of $7,500, with interest at 6 per cent. from the 3rd day of December, 1924.

"It is, therefore ordered, adjudged, and decreed by the court that the plaintiff, Fred A. Tillman, assignee, have and recover from Dora Shimonek, administratrix of the estate of Ralph Malone, the sum of $7,500 with interest at 6 per cent. from the 3rd day of December, 1924, together with the costs of this action, for which let execution issue."

From which judgment, defendant, plaintiff in error, appeals. The plaintiff in error, defendant below, alleges five assignments of error, all of which are of the usual statutory form, but plaintiff in error chooses to discuss said errors under three propositions. We will

discuss the propositions in their numerical order.

### First Proposition.

Defendant says:

"The alleged incompetent being an allottee of the Osage Indian Tribe, it was necessary to enable the county court to obtain jurisdiction to appoint a' guardian, that copies of all papers filed in the court be served on the Superintendent of the Osage Agency at the time of filing, as provided in section 3 of the Act of Congress, approved April 18, 1912 (37 Stat. L. 36)."

It was stipulated that Ralph Malone was a full-blood Indian (Rec. p. 56). There is an apparent ambiguity in the federal and state statutes relating particularly to the giving of the notice for the appointment of a guardian for an incompetent full-blood Indian heir. The state statute provides that the notice shall be given to the supposed incompetent person (1449, C. O. S. 1921). The federal statute provides that notice shall be given by serving a copy of all the papers filed in the county court upon the Superintendent of the Osage Indian Agency.

Defendant contends that a copy of all the papers filed in the county court for the appointment of John W. Tillman, as guardian, were not served on the Superintendent of the Osage Indian Agency as required by law.

The record in this case shows that Ralph Malone, deceased, defendant herein, in person and in association with his mother and wife, did, on the 25th day of August, 1917, file a petition in the county court of Osage county, Okla., praying the appointment of John W. Tillman as guardian of the person and estate of the said Ralph Malone, an incompetent.

On August 27, 1917, a notice of the application for appointment of a guardian was served on Ralph Malone, incompetent, and on J. George Wright, Superintendent of the Osage Indian Agency, of the time and place of the hearing of said application to appoint a guardian.

On the 15th day of September, 1917, John W. Tillman was appointed guardian of the person and estate of Ralph Malone, incompetent. The record further discloses that copies of the letters of guardianship and the guardianship bond were served on the Superintendent of the Osage Indian Agency (C.-M. 181) and that immediately after the appointment of John W. Tillman as guardian of Ralph Malone, the Osage Agency recognized the appointment and paid to him as guardian of Ralph Malone large sums of money (C.-M. 184). The order of the county court appointing John W. Tillman as guardian also recites that the Osage Agency was notified five days before the hearing of the petition for his appointment of the day said petition would be heard, by personal service on the Superintendent of the Osage Agency (C.-M. 139).

Mr. E. S. McMahon, principal clerk and acting probate attorney at the Osage Indian Agency, testified (C.-M. 180, 184), that notice of the hearing of the petition for the appointment of John W. Tillman as guardian of Ralph Malone was served on the agency; that copies of the bond and letters of guardianship were also served on the Osage Agency; that after the appointment of Mr. Tillman, as guardian of Ralph Malone, the Superintendent of the Osage Indian Agency expressly recognized the appointment of Mr. Tillman as guardian of Ralph Malone and paid to said guardian the funds of the said Ralph Malone by virtue of the said appointment.

On the 31st day of December, 1921, John W. Tillman resigned as guardian of Ralph Malone, and A. G. Williams was appointed guardian of the person and estate of the said Ralph Malone in Tillman's stead.

Section 3, ch. 83, United States Statutes at Large, vol. 37, 86, in part, reads as follows:

"* * * A copy of all papers filed in the county court shall be served on the Superintendent of the Osage Agency at the time of filing. * * *"

Section 3, supra, in part, further provides:

"* * * And said Superintendent is authorized, whenever the interests of the allottee require, to appear in the county court for the protection of the interests of the allottee. * * *"

Said section and chapter of the federal law, supra, further provides:

"* * * And said Superintendent is authorized, whenever the interests of the allottee require it, to appear in the county court for the protection of the allottee. * * *"

Said section and chapter of the federal law, supra, further provides:

"* * * That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall in probate matters be subject to the jurisdiction of the county courts of the state of Oklahoma."

It will be observed from a careful reading of the above section that Congress has con-

ferred upon the county courts of this state jurisdiction to dispose of the property belonging to minors, insane persons, and incompetents, who are of Osage Indian blood.

### Jurisdiction of County Courts.

Section 1081, C. O. S. 1921, provides:

"All petitions for the approval of deeds to lands inherited by full-blood Indian heirs. * * *"

Section 1082, C. O. S. 1921, provides:

"The county court shall establish a date upon which all petitions for the approval of deeds to lands inherited by full-blood Indians shall be heard. * * *"

Section 1079. C. O. S. 1921, 11th subdivision, reads as follows:

"* * * To appoint and remove guardians for infants, and for persons insane or otherwise incompetent; to compel payment and delivery by them of money or property belonging to their wards, to control their conduct and settle their accounts."

Section 1084, C. O. S. 1921, provides:

"The provisions of this act shall constitute the exclusive law governing the procedure relative to the conveyance of inherited lands by adult full-blood Indian heirs. All provisions of law heretofore enacted in conflict herewith are hereby repealed and set aside, and no court shall have the power to promulgate or enforce any rules in conflict with this act."

Sections 1091, 1082, 1079, and 1048, C. O. S. 1921, supra, all relate to the disposition of lands inherited by a full-blood Indian heir, and are jurisdictional.

### Procedure for the Appointment of Guardians.

Section 1449, C. O. S. 1921, prescribes the procedure and reads as follows:

"When it is represented to the county court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the judge must cause notice to be given to the supposed insane or incompetent person, of the time and place of hearing the case, not less than five days before the time so appointed, and such person, if able to attend, must be produced before him on the hearing."

It will be observed that in the procedure prescribed for the appointment of a guardian for an incompetent full-blood Indian heir, the federal statutes confer exclusive jurisdiction upon the county courts of Oklahoma to appoint such guardian.

Defendant contends that the congressional act is controlling and that the word "all" means that all the papers, or copies thereof,

filed in the county court, shall be served upon the Superintendent of the Agency. With which contention we cannot agree.

Section 3, ch. 83, 37 U. S. Stat. L. 86, supra, provides that the incompetency of a full-blood Indian heir shall be determined by the laws of the state of Oklahoma.

Section 1449, C. O. S. 1921, provides:

"The judge must cause notice to be given of the time and place of the hearing of the case."

We construe the word "all," or "all papers," as used in the congressional act, supra, to mean such papers or notice only as is required by section 1449, C. O. S. 1921, i.e., meaning, when an action is pending in a county court of Oklahoma to appoint a guardian for an incompetent full-blood Indian heir "the judge must cause notice to be given to the Superintendent of the Indian Agency of the time and place of said hearing," and that the manner and form of the notice is immaterial. We do not want to be understood as holding that notice to the Superintendent of the Indian Agency is unnecessary. We make no such contention.

We may ask, What is the purpose of serving notice on the Superintendent of the Agency? The act, section 3, ch. 83, 37 U. S. Stat. L. 86, answers the question as follows:

"* * * The Superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of * * * the guardian, or other person having in charge the estate of any deceased allottee or minors or persons incompetent under the laws of Oklahoma. * * *"

The above quotation is the controlling and significant part of the context of the congressional act, supra, relating to the serving of notice on the Superintendent of the Agency, in such cases.

We construe that part of the context above quoted to mean, when an action is pending in a county court of this state relating to the disposition of the inherited property of an incompetent full-blood Indian heir, the Superintendent of the Indian Agency should be served with such notice as is required by the laws of the state of Oklahoma in such cases made and provided.

We think the serving of notice on the Superintendent of the Agency as provided by our statute is a substantial compliance with the spirit and purpose of the congressional act, as expressed by the context of the act.

At this juncture it will be well to remember that in such matters Congress has conferred exclusive jurisdiction upon the Oklahoma courts.

When notice as required by our statute is served upon the Superintendent of the Agency, he is thereby accorded full opportunity to appear in the court, if he deems it necessary, and defend the interest of his ward.

The Oklahoma statute provides: "The judge must cause notice to be given. * * *" The federal statute provides: "A copy of all papers shall be served. * * *" We think it will be conceded that both of the above quotations purport "Notice,"—That is, when an action of this character is filed, it is the duty of the court to cause notice to be given to the parties in interest as is required by law. Our Legislature used the word "given." Congress used the word "served." We think it will be conceded that the words "given" and "served" are in law and practice synonymous; used interchangeably, and have the same meaning. To our mind, the whole confusion caused by the contention of defendant is in the use of the words "all" or "all papers."

The congressional act reads "all" papers shall be served. Our statute reads "notice" shall be given.

"Service" defined:

"Law. An act of bringing to notice, either actually or constructively, in such manner as is prescribed by law." Webster.

"Notice" defined:

"The term (notice) is not a technical word, and, while it can have various meanings, the meaning to be given by the courts is to be controlled largely by the context and by the purpose and intent of the enactment. * * * The term shall receive reasonable interpretation with reference to the subject with which it is applied." 46 C. J. 538.

"It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every section, clause, word, or part of the act." 25 R. C. L. 1004.

"If possible a statute shall be so construed as to render it a consistent and harmonious whole; if different portions seem to conflict, they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory." 25 R. C. L. 1008.

We do not think Congress intended that all papers should be served on the Superintendent of the Agency. Such a construction would be nugatory, because without sanction of law, and very unusual in practice, but Congress did intend to say that a notice, as is required by the laws of Oklahoma, must also be served on the Superintendent of the Indian Agency.

"Obviously, in order that effect may be given to every part of an act in accordance with the legislative intent, all the language of the act must be considered and brought into accord. It is not safe to base a construction upon a particular word or phrase, for the language of legislative enactments is not always precise and accurate; besides, one portion may be frequently designed to extend, qualify, or limit another, that the meaning of one portion of the statute may depend upon the effect of another. Hence, it is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole, and of every part of a statute taken and compared together." 25 R. C. L. 1006, and numerous authorities cited thereunder.

"But while the courts cannot add to, take from, or change the language of the statute, to give effect to any supposed intention of the Legislature, words and phrases may be altered and supplied when that is necessary to obviate repugnancy and inconsistency and to give effect to the manifest intention of the Legislature." 25 R. C. L. 975.

In view of the fact Congress has conferred exclusive jurisdiction in such matters upon the county courts of this state, and in view of the further fact that our statute and the congressional act both prescribe that notice must be served on all parties in interest, and as, in the instant case, on the incompetent and the Superintendent of the Indian Agency, can it be rightfully contended that it is necessary to serve a copy of all the papers filed in an action of this character on the Superintendent of the Indian Agency?

We are unable to find any other law, statutory or judicial, which requires that all the papers filed in any action at law shall be served upon the opposing party in interest. The converse of the rule contended for is so well known to all members of the legal profession, that we deem any further discussion of the subject unnecessary.

Having found that notice of the application for the appointment of a guardian was served on the incompetent, and finding that a notice of the application for the appointment of a guardian and copies of the guardianship letters and bond were, in fact, served upon the Superintendent of the Osage Indian Agency five days prior to the hearing of said cause, and having further found

that the Superintendent of the said Agency did appear before the county court in the trial of said cause, by and through the chief clerk of said agency in the interest of his ward, held, that said appearance and participation on the part of the Superintendent of the Agency is a waiver of any irregularity or form of notice given in said cause; further held, the notice of the application to appoint a guardian served upon the Superintendent of the Agency in the instant case was a substantial compliance with the law.

The defendant cites, in support of his contention, the holding of this court in Collinson v. Threadgill, 122 Okla. 174, 252 Pac. 827, wherein the court quotes the congressional act under discussion, and holds that the same must be complied with. So do we hold in the instant case, that a compliance with said act is necessary.

We have very carefully read the Collinson Case, and do not think it is in conflict with the holding in the case at bar. In the Collinson Case, the court made a specific finding that no service of any kind had been made upon the Superintendent of the Agency (quoting):

"It fails to appear that any of the papers, either incident to the guardianship, or any of the other papers incident to the application for the allowance to the appellant, Collinson, were ever served upon the Superintendent of the Osage Indian Reservation."

Further along in the body of the opinion, the court said:

"If there were no other impediment present to the conscious mind of the county judge and the district judge on appeal, other than that said act of Congress had not been complied with, this court would not reverse the action where it has not been shown that the application for this allowance had been served on the Superintendent as by said act provided."

The county court and the district court, on appeal, found and held, in the instant case, that a substantial compliance with the law in reference to the giving of notice was had.

The defendant, as heretofore observed, bases his defense on the allegation of his first proposition, supra, wherein he contends that the plaintiff having failed to "serve copies of all the papers filed in the county court on the Superintendent of the Agency, the lower court was without jurisdiction to render judgment." Having heretofore discussed this proposition as fully as we deem necessary, we will not repeat.

The defendant, in subdivision "B" of his first proposition, says:

"The county court was without jurisdiction to appoint a guardian because the petition for the appointment was not verified by a relative or friend as required by section 1449, C. O. S. 1921."

We have examined the petition for the appointment of guardian in the instant case, and find the petition was signed by the incompetent in person, and by his wife and grandmother, the wife and grandmother having signed by mark. We further find when Ralph Malone signed the petition for the appointment of a guardian, he was an adult of full age, married, and living with his wife.

This court, in the case of Conner v. Bartlett, 111 Okla. 3, 238 Pac. 411, held:

"When a matter has once passed to final judgment without fraud or collusion, in a court of competent jurisdiction it has become res judicata, and the same matter, between the same parties, cannot be reopened or subsequently considered in another action."

We think this court very properly disposed of defendant's contention in subdivision "B."

Defendant further contends that a citation was not served on the incompetent. We cannot agree with this contention. The record shows that a notice was served on the incompetent by the deputy court clerk in the contemplated action, and, in fact, the incompetent not only signed the petition for the appointment of a guardian, but also participated in every phase of the trial. Held, under the facts and circumstances in the instant case, service of citation is immaterial.

### Second Proposition.

Again, the defendant contends that:

"The purported contract relates to tribal funds and property in the hands of the United States, and is invalid because the consent of the United States was not given thereto."

We are unable to find that this defense was interposed in the trial of this cause in the court below. In truth and in fact, the opening statement of counsel very clearly shows that in the trial court the defense submitted by the defendant was solely to the effect that the guardianship was void, and that the county court of Osage county was without jurisdiction to approve the contract (C.-M. 38). This is also shown by the objection to certain testimony (C.-M. 111).

This court has held, in cases too numerous to mention, "that a person who presents his defense to a cause of action in the trial court upon a certain definite theory, cannot then ask to have the cause reversed in the

Supreme Court upon an entirely different theory." Pine Belt Lumber Co. v. Riggs, 8J Okla. 28, 193 Pac. 990, and many other cases.

### Third Proposition.

Defendant further contends: "The court erred in the assessment of the amount of the recovery, the same being too large." This action was tried to the court, a jury having been waived by both parties. After the evidence in the case at bar was closed, the trial court took the case under advisement for several days, and on delivering his opinion, fixed the amount of plaintiff's recovery at $7,500.

This court has in many instances held that:

"When a jury is waived, and issues both of law and fact are submitted to the trial court, its finding will not be disturbed by this court, if there is any evidence reasonably tending to support the same." Lamb v. Bennett, 81 Okla. 41, 196 Pac. 543, and many other cases.

Defendant, in his brief (page 49), says:

"A. G. Williams was appointed guardian on January 3, 1922, without notice or hearing as successor to John W. Tillman, former guardian, upon issuance of his resignation. pursuant to power found in section 1491, C. O. S. 1921."

This court has held that the court may remove a guardian for mismanagement, without notice. In re Guardianship of Chambers, 46 Okla. 139, 148 Pac. 148.

Having held that the appointment of John W. Tillman as guardian of the person and estate of Ralph Malone, incompetent, a valid appointment, it would serve no good purpose to discuss this subject further.

We have devoted much time and careful study to the issues involved in this case, and conclude that the defendant. plaintiff in error, has failed to sustain his defense to plaintiff's cause of action. We are of the opinion and hold that the notice of the application to appoint a guardian in the instant case served on Ralph Malone, incompetent, and the Superintendent of the Osage Indian Agency, as shown by the record in this case, was a substantial compliance with the law. Where it appears from the record that the Superintendent of the Indian Agency was served with notice of the application, filed in the county court for the appointment of a guardian for an incompetent Indian heir, and it further appears said superintendent appeared in said court in the interest of his ward, held, the superintendent thereby waived any irregularity as to the form or service of said notice.

We find no error on the part of the trial court in rendering judgment for the plaintiff, defendant in error. The judgment of the trial court is affirmed.

CLARK, V. C. J., and HEFNER, SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY and KORNEGAY, JJ., dissent. LESTER, C. J., absent.