DEFINITIONS AND GENERAL PROVISIONS
The provisions of the Open Meeting Act, 25 O.S. 301-314 [25-301-314] (1977), are wholly applicable to the Oklahoma Tax Commission and the Commission is not exempt from the Act as a part of the "state judiciary" even though it performs adjudicative functions; however, in light of the provisions of 68 O.S. 205 [68-205] (1977) and 38 U.S.C. § 6103, 7213 and 7217, concerning the confidentiality of tax returns and return information, and imposing state and federal criminal sanctions on the divulgence of such information, that portion of a proceeding before the Tax Commission involving the divulgence of tax returns and return information may be closed. The proceeding should be open until such time as confidential tax returns or return information must be divulged and then may be closed temporarily for the divulgence of the information and reopened again. In all other respects, meetings, hearings or proceedings of the Tax Commission must be open to the public, except that the Commission can go into executive session for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any individual salaried public officer or employee of the Commission, and under the holding of Oklahoma Association of Municipal Attorneys, et al, vs. State of Oklahoma, 49 O.B.J. 719 (April 25, 1978), for purposes of 'confidential communications between a majority of the commissioners and staff attorneys, but only if such communications concern "a pending investigation, claim or action and disclosure of the matters discussed would seriously impair the ability of the Commission to process the claim or conduct the pending investigation, litigation or proceeding in the public interest." The Attorney General has considered your request for an opinion wherein you set out certain salient facts and then ask, in effect, the following questions: 1. Do the general provisions of the Open Meeting Law, 25 O.S. 301-314 [25-301-314] (1977) supersede the specific state and federal statutes applicable to confidentiality of tax matters, 68 O.S. 205 [68-205] (1977), and 26 U.S.C. § 6103, 7213 and 7217? 2. If the Open Meeting Law supersedes the above-mentioned state and federal provisions, should adjudicative functions of the Commissioners involving tax protest hearings under 68 O.S. 207 [68-207] (1977) be excepted under the judiciary exceptions to the Open Meeting Law? 3. Is a meeting of two or more Commissioners to discuss purely administrative matters such as the status of the Commission data processing program a meeting within the meaning of the Open Meeting Law? "4. Is a meeting of two or more Commissioners to discuss Commission policies such as a decision as to whether to distribute auto tag funds to the county of residence of the taxpayer or the tag agent a meeting within the meaning of the Open Meeting Law"? 5. If question four is answered in the affirmative, what is a policy decision or act of public business within the meaning of the Open Meeting Law? 6. If questions 1, 2 or 3 are answered in the affirmative, are consultations between the Commissioners and staff attorneys protected by the attorney-client privilege from the Open Meeting Law? 7. Should administrative and policy decisions of the Tax Commission be subjected to the Open Meeting Law simply because the Commission has multi-directorship instead of a single administrator? The 1977 Oklahoma Legislature enacted a comprehensive Open Meeting Law and directed that it be codified in 25 O.S. 301-314 [25-301-314] (1977). The Act became effective October 1, 1977. At the outset, it should be established that the Oklahoma Tax Commission falls directly under the provisions of 25 O.S. 304 [25-304](1) of the Act which defines "public body." 25 O.S. 304 [25-304](2) defines a "meeting" as the "conducting of business of a public body by a majority of its members being personally together." 25 O.S. 307 [25-307] provides that no public body shall hold executive sessions unless specifically provided in the Act. The Section goes on to enumerate those instances in which an executive session may be held by a public body. The so-called "personnel" exception which was recognized in the old open meeting law remains virtually intact in 25 O.S. 307 [25-307]. The only other executive sessions authorized by 25 O.S. 307 [25-307] relate to district boards of education and are not applicable to the Tax Commission. The first part of your first question involves a determination of whether the new Open Meeting Act supersedes 68 O.S. 205 [68-205] (1977) which provides in pertinent part: "(a) The records and files of the Tax Commission concerning the administration of this article, or of any state tax law, shall be considered confidential and privileged, except as provided otherwise by law and neither the Tax Commission nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any person who may have secured information therefrom, shall divulge or disclose any information obtained from the said records or files or from any examination or inspection of the premises or property of any person. "(b) Neither the Tax Commission nor any employee engaged in such administration or charged with the custody of any such records or files shall be required by any court of this state to produce any of them for the inspection of any person or for use in any action or proceeding except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this article, or of the State tax law affected, or when the determination of the action or proceeding will affect the validity or the amount of the claim of the State under any State tax law, or when the information contained therein constitutes evidence of the violation of this article, or any State tax law . . . ." The remainder of this lengthy section contains certain exceptions to the confidentiality of records and files and provides for criminal penalties and forfeiture of office for a violation of the section. The confidentiality of tax records is also recognized in 51 O.S. 24 [51-24] (1971) which provides: "It is hereby made the duty of every public official of the State of Oklahoma, and of its sub-divisions, who are required by law to keep public records pertaining to their said offices, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this State, and its sub-divisions, during all business hours of the day; provided, however, the provisions of this act shall not apply to Income Tax Returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret." (Emphasis added) The second part of your first question involves whether or not the new Open Meeting Act supersedes 26 U.S.C. § 6103, 7213 and7217. Title 26 U.S.C. § 6103(b) (2) and (3) provide: "(2) Return information. — The term 'return information' means — "(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture or other imposition, or offense, and "(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. "(3) Taxpayer return information. — The term `taxpayer return information' means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates." Title 26 U.S.C. § 7213(a) provides for criminal and civil penalties for unlawful disclosure of any return or return information as defined above. Section 7213 (a) (2) makes it unlawful for a state employee to disclose a return or return information acquired under the procedure set forth in Section 6103(d). A violation of Section 7213 is a felony punishable by a fine not exceeding $5,000.00 or imprisonment for not more than five (5) years or both. Title 26 U.S.C. § 7217 provides for civil damages for unauthorized disclosure of returns or return information as defined in Section 6103. Section 7217 states in pertinent part: "(a) General Rule. — Whenever any person knowingly, or by reason of negligence, discloses a return or return information (as defined in section 6103 (b)) with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person, and the district courts of the United States shall have jurisdiction of any action commenced under the provisions of this section. "(b) Damages. — In any suit brought under the provisions of subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of ___ "(1) actual damages sustained by the plaintiff as a result of the unauthorized disclosure of the return or return information and, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, but in no case shall a plaintiff entitled to recovery receive less than the sum of $1,000 with respect to each instance of such unauthorized disclosure; and "(2) the costs of the action." There are additional considerations other than the criminal and civil penalties discussed above. Title26 U.S.C. § 6103(p)(8) sets out requirements to which the State law must conform. This section states in part: "(A) Safeguards. — Notwithstanding any other provision of this section, no return or return information shall be disclosed after December 31, 1978, to any officer or employee of any State which requires a taxpayer to attach to, or include in, any State tax return a copy of any portion of his Federal return, or information reflected on such Federal return unless such State adopts provisions of law which protect the confidentiality of the copy of the Federal return (or portion thereof) attached to, or the Federal return information reflected on, such State tax return." This section has a crucial impact on Oklahoma tax administration, since our State income tax is based on the federal adjusted gross income. Therefore, under the terms of Section 6103(p)(8), the federal government will not supply the state return or return information after December 31, 1978, unless the State adopts provisions of law which protect the confidentiality of the federal information. Title 68 O.S. 205 [68-205] (1977), set out above, is the statute which enables the State to continue to receive information from federal returns. It is highly unlikely that the Legislature, in enacting the new Open Meeting Act, intended to jeopardize this access to federal information which serves as a basis for State tax computation. The very nature of a proceeding before the Oklahoma Tax Commission wherein a taxpayer protests an assessment is such that officers and employees of the Commission could face dire penalties if the formal hearing was totally open to the public. The proceedings require employees (such as General Counsel and staff attorneys) to divulge confidential return information and other information in support of the assessment. If the information is divulged in a public setting, it appears that the officer or employee involved would be subject to both federal or state criminal prosecution and potential civil penalties. We do not believe that the Oklahoma Legislature could have intended such a result. Statutes must be read together and construed so as to resolve conflicts and breathe life into all enactments of the Legislature unless the conflict is irreconcilable, Shimonek v. Tillman, 150 Okl. 177, 1 P.2d 154 (1931), and Ritchie v. Raines, Okl.Cr., 374 P.2d 772 (1962). Statutes should also be interpreted in a manner that will not lead to an absurd construction, Tannehill v. Special Indemnity Fund, 538 P.2d 590 (1975); Stockton v. Oklahoma Tax Commission, 205 Okl. 6, 235 P.2d 286 (1951); Campbell v. Cornish, 163 Okl. 213, 22 P.2d 63 (1933); and Board of Education of Oklahoma City v. Woodworth, 89 Okl. 192,214 P. 1077 (1923). It is obvious that the Oklahoma Legislature and the United States Congress have specifically, indeed emphatically, mandated the confidentiality of tax returns and return information. While it is clear that the Tax Commission is covered by the Open Meeting Act, it is just as apparent that it was never intended that individual taxpayer returns or information be divulged to the public. The Legislature could not have enacted a confidentiality law with civil and criminal penalties and then, by enacting the Open Meeting Act, intended for officers and employees of the Tax Commission to break that State confidentiality law and federal law in order to perform their duties. Any other conclusion would be unreasonable. Your second question asks whether tax protest hearings under 68 O.S. 207 [68-207] (1971) should be exempt from coverage of the Open Meeting Act, under the "judiciary exception" to the law. In 68 O.S. 304 [68-304] which, as aforesaid, defines "public body", the following language appears: ". . . It shall not mean the State judiciary or the State Legislature or administrative staffs of public bodies . . . ." The mere fact that the Oklahoma Tax Commission performs adjudicative functions and has certain adjudicative powers is not sufficient to make the Commission a part of the State judiciary as that term is used in 68 O.S. 304 [68-304]. Absent provisions of the Constitution, statutes or case decisions to the contrary, it cannot be held that the Oklahoma Tax Commission is a part of the State judiciary. Your third and fourth questions are answered by a plain reading of 68 O.S. 304 [68-304](2) of the Open Meeting Law which provides: " 'Meeting' means the conducting of business of a public body by a majority of its members being personally together." It is clear that administrative matters such as the status of the Commission data processing program and discussion of Commission policies such as a decision as to whether to distribute auto tag funds to the county of residence of the taxpayer or the tag agent both amount to the conducting of business by the Commission and any conducting of said business by two members of the three member Tax Commission constitutes a "meeting" under the new Open Meeting Law. As to your fifth question, the new Open Meeting Act does not define "a policy decision or act of public business" but the answer to the question naturally flows from the duties enjoined upon the Oklahoma Tax Commission by law. When a majority of the members of the Commission are performing functions necessary to carry out the responsibilities of the Commission, whether they be executive, administrative or quasijudicial, they are "conducting business" of the Commission. Your sixth question is answered by the case of Oklahoma Association of Municipal Attorneys, et al. v. State of Oklahoma, 49 O.B.J. 719 (April 25, 1978), wherein it was held that a public body could go into executive session for confidential communications with its attorney, but only if the communication concerns "a pending investigation, claim or action, and disclosure of the matter discussed would seriously impair the ability of the public body to process the claim or conduction of the pending investigation, litigation or proceeding in the public interest." Your seventh question is not amenable to a legal answer in light of the fact that the Legislature did not choose to have the State tax laws administered by a single administrator but instead created a three member tax commission which clearly falls within the definition of a "public body" contained in Section 304 of the new Open Meeting Act. It is, therefore, the opinion of the Attorney General that your questions be answered in the following manner: The provisions of the Open Meeting Act, 25 O.S. 301-314 [25-301-314] (1977), are wholly applicable to the Oklahoma Tax Commission and the Commission is not exempt from the Act as a part of the "State judiciary" even though it performs adjudicative functions; however, in light of the provisions of 68 O.S. 205 [68-205] (1977) and 28 U.S.C. § 6103, 7213 and 7217, concerning the confidentiality of tax returns and return information, and imposing state and federal criminal sanctions on the divulgence of such information, that portion of a proceeding before the Tax Commission involving the divulgence of tax returns and return information may be closed. The proceeding should be open until such time as confidential tax returns or return information must be divulged and then may be closed temporarily for the divulgence of the information and re-opened again. In all other respects, meetings, hearings or proceedings of the Tax Commission must be open to the public, except that the Commission can go into executive session for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any individual salaried public officer or employee of the Commission, and under the holding of Oklahoma Association of Municipal Attorneys, et al. v. State of Oklahoma, 49 O.B.J. 719 (April 25, 1978), for purposes of confidential communications between a majority of the commissioners and staff attorneys, but only if such communications concern "a pending investigation, claim or action and disclosure of the matters discussed would seriously impair the ability of the Commission to process the claim or conduct the pending investigation, litigation or proceeding in the public interest." (GERALD E. WEIS)