Milford A. VEISER, Carton S. Stallard, also known as Carlton S. Stallard, Louis Stein, Edward R. Eberle, William W. Hagerty, Ross D. Hill, James C. Kellogg III, William L. Pereira and W. Paul Stillman, as trustees, pursuant to the Declaration of Trust of Hamilton Investment Trust, a voluntary business association,

and

First National Bank and Trust Company of Tulsa, Firstul Mortgage Company, and Sackman Gilliland Corporation, Appellees,

v.

Nellie Atkins ARMSTRONG, Appellant,

and

Young & Latch Investments, an Oklahoma general partnership, Robert L. Latch, M.R. Wilmot, Inc., and B.H. Mayfield, doing business as Mayfield Supply Company, and Baker, Baker & Martin, an Oklahoma general partnership, or if said partnership no longer exists, then its unknown successors, Appellees,

and

Broken Arrow Mall, Inc., Abercrombie, Pedigo & Smith, Inc., and Maple Leaf Apartments, Ltd., Defendants.

No. 57878.

Supreme Court of Oklahoma.

Sept. 18, 1984.

C. Rabon Martin, Tulsa, for appellant.

Timothy E. McCormick, Edwin R. Reavis, Rogers, Honn, Hill, Secrest & McCormick, Tulsa, Monty L. Bratcher, Oklahoma City, for appellee, Hamilton Inv. Trust.

Conner, Winters, Ballaine, Barry and McGowen, Tulsa, for appellees, Young & Latch Investments, Robert L. Latch, The First Nat. Bank and Trust Co. of Tulsa and Firstul Mortg. Co.

Royce H. Savage, Tulsa, for appellee, Sackman Gilliland Corp.

OPALA, Justice.

This appeal was brought for review of the trial court's (1) order granting a plea to the jurisdiction and motion to quash interposed by some parties and of (2) order granting summary judgment on motion by the remaining parties to the claim. By an earlier opinion this court dismissed the appeal insofar as it sought corrective relief from the order granting a plea to the jurisdiction and motion to quash.[1]

## FACTS

Billy Atkins [Atkins], an enrolled full-blood Creek Indian was the conveyee of a 1903 surplus allotment of 120 acres. Alienation of the land was then restricted by a congressional act. Upon his death in 1923 Atkins' three surviving children, Creeks of the half-blood, each inherited an undivided one-third interest in their father's allotment. These surviving children were Nellie Armstrong [Armstrong], appellant herein, and her two brothers. Upon the death of Atkins the restrictions on the land came to be terminated by operation of law. His children hence took free of any restrictions on the land and also of any personal restrictions.

Armstrong and her brothers exchanged deeds in 1940. As a result of this action each of them became the owner of a complete interest in an entire 40-acre tract. Although the land was still unrestricted when this occurred, Congress, in 1947, changed its policy by retroactively imposing restrictions on certain lands transferred by inheritance.[2] More specifically the restriction was placed on any interest in land that had been acquired by Indian heirs or devisees of one-half or more Indian

1. *Armstrong v. Trustees of the Hamilton Investment Trust,* Okl., 667 P.2d 985 [1983].

2. 61 Stat. 731.

blood when such interest in land was restricted in the hands of the person from whom the Indian heir or devisee acquired the land. The restriction imposed by the Act provided that "[n]o conveyance [of such lands] shall be valid *unless approved ... by the county court* of the county in Oklahoma in which the land is situated ..." [3] [emphasis supplied].

Armstrong and her husband conveyed in 1965 by warranty deed her 40-acre tract to Becko. The present parties in interest acquired the land through a series of subsequent conveyances. In 1974 Armstrong brought suit in a federal court for ejectment and to quiet title in herself. She alleged that the deed to Becko was void since it was not given in compliance with the 1947 congressional act. Both federal courts—district and circuit—held against her.[4]

Hamilton Investment Trust, holder of several mortgages on the property in question, sought in this suit to foreclose its mortgages upon the land in dispute. Armstrong, as a defendant in the case, filed her counterclaim and cross-petition for ejectment. She alleged she was the owner of the property in suit and joined in the litigation all those persons who were parties in the prior federal suit.

The state court found that Armstrong's claims to the land were barred by the prior federal adjudication. Summary judgment was rendered against Armstrong and in favor of all the parties who had been successful in the prior federal-court suit.

 The case presents a mixed federal-state question of law. Federal law governs both the preclusive and res judicata effect of the prior federal-court judgment [5] but (b) state law must be applied in gauging the correctness of the procedure invoked for launching the collateral attack.[6]

 The posture of this case raises two related issues for our resolution: (1) whether "issue preclusion" [7] is invocable as

3. 61 Stat. 731.

4. *Armstrong v. Maple Leaf Apartments, Ltd.,* 436 F.Supp. 1125 [N.D.Okl.1977], *affd.* 622 F.2d 466 [10th Cir.1980], *cert.den.* 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 [1980].

 The district court held that Armstrong was guilty of laches and barred her from any relief. The circuit court affirmed, holding that two-thirds of her interest in the property did not fall within the provisions of the 1947 Act because it had been acquired from her brothers and not by inheritance and was therefore unrestricted. As to her claim for the remaining one-third interest, the circuit court held that Armstrong was barred by laches. The United States Supreme Court denied certiorari.

5. When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law. The facial validity of a federal judgment—a question that hinges on the presence of the three essential elements of jurisdiction—also is measured by federal law. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 [1980]; *Migra v. Warren City School District Bd. of Educ.,* —— U.S. ——, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 [1984]; *Stoll v. Gottlieb,* 305 U.S. 165, 170, 59 S.Ct. 134, 137, 83 L.Ed. 104 [1938]; *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 334, 78 S.Ct. 1209, 1217, 2 L.Ed.2d 1345 [1958]; see also

*Roundtree v. Bates,* Okl., 630 P.2d 1299, 1301 [1981]; *Pettit v. American Natl. Bank of Austin,* Okl., 649 P.2d 525, 527 [1982]. A foreign court's jurisdiction of a cause of action may ordinarily be the subject of a collateral attack. The full faith and credit clause does not require that courts recognize foreign judgments rendered without jurisdiction. *Pettit v. American Natl. Bank of Austin,* supra; *Allen v. Allen,* Okl., 256 P.2d 449, 454 [1953]; *Williams v. State of North Carolina,* 325 U.S. 226, 228, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577 [1945]; *Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278 [1940].

6. In a conflict-of-law analysis matters of procedure are governed by the law of the forum. *Northern Pacific Railway Co. v. Babcock,* 154 U.S. 190, 194, 14 S.Ct. 978, 981, 38 L.Ed. 958 [1894]; *Shimonek v. Tillman,* 150 Okl. 177, 1 P.2d 154 [1931] (syllabus 4).

7. The Restatement of Judgments now speaks of collateral estoppel as "issue preclusion". Restatement (Second) of Judgments § 74 [1982]. *Allen v. McCurry,* supra note 5, 449 U.S. at 94, 101 S.Ct. at 415, 66 L.Ed.2d 308 [1980]; *Migra v. Warren City School Dist. Bd. of Educ.,* supra note 5, 104 S.Ct. at 894 [1984]; *United States v. Mendoza,* —— U.S. ——, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 [1984]; *Oklahomans for Life, Inc. v. State Fair of Oklahoma,* Okl., 634 P.2d 704, 706–707 [1981].

a bar against a collateral attack upon the federal-court judgment based on an alleged jurisdictional defect and (2) whether "claim preclusion" [8] is applicable to prevent relitigation of Armstrong's claims to the land in suit against all the parties in her prior litigation.[9]

We hold that the procedural avenue of collateral attack, based on the theory of a facially void judgment, is foreclosed to Armstrong by operation of issue preclusion because that issue has been previously "fully and fairly" litigated in the federal courts albeit in the procedural context of a somewhat different cause of action. Since Armstrong's attack was the only device open to her in the state court in order to avoid the effect of the prior federal-court judgment—and that route is held here unavailable—claim preclusion will operate to bar relitigation of her asserted claims to the land in suit.

**8.** The Restatement of Judgments now speaks of res judicata as "claim preclusion". Restatement (Second) of Judgments § 74 [1982]. *Allen v. McCurry,* supra note 5; *Migra v. Warren City School Dist. Bd. of Educ.,* supra note 5; *United States v. Mendoza,* supra note 7; *Oklahomans for Life, Inc. v. State Fair of Oklahoma,* supra note 7.

**9.** Under res judicata, a final judgment *on the merits* of an action precludes the parties or their privies from relitigating issues that were or could have been raised *in that action. Allen v. McCurry,* supra note 5, 449 U.S. at 94, 101 S.Ct. at 414; *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 [1876]. Under collateral estoppel, once a court has decided *an issue of fact or law* necessary to its judgment, that decision may preclude relitigation of the issue *in a suit on a different cause of action involving a party to the first case. Allen v. McCurry,* supra note 5; *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 [1979].

**10.** The judgment roll, which is synonymous with "record proper", consists of "... the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; ..." 12 O.S. 1981 § 32.1, renumbered in 1972 from 12 O.S. 1971 § 704, Okla.Sess.L.

## I

## ISSUE PRECLUSION BARS ARMSTRONG'S CLAIM THAT THE PRIOR FEDERAL-COURT JUDGMENT IS FACIALLY VOID FOR LACK OF SUBJECT MATTER JURISDICTION

Armstrong's challenge is rested on the federal court's facial want of subject matter jurisdiction and of the power to render the judgment. She does not question that court's jurisdiction over the parties.

Although a question may arise on the face of the judgment roll [10] as to the presence of an essential jurisdictional prerequisite—whether it be (a) jurisdiction of the parties, (b) jurisdiction of the subject matter or (c) jurisdictional power to render the particular judgment—issue preclusion will nonetheless operate to bar a collateral attack upon the judgment if want of the jurisdictional element that facially appears to be in doubt has been "fairly and fully" litigated as a disputed issue between the parties.[11]

1972, c. 119 § 5; *Mid-Continent Pipe Line Co. v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 [1944].

**11.** The instant state-court case was brought to foreclose mortgage liens. Armstrong's cross-claim and counterclaim, as authorized by 12 O.S. 1981 § 1651 and construed in *Carpenter v. Carpenter,* Okl., 645 P.2d 476, 481 [1982], sought in effect to declare the prior federal judgment invalid and, if victorious, to eject the parties in possession. Because prior federal litigation stood in a procedurally different posture and a different cause of action was litigated, issue preclusion, rather than claim preclusion, is applicable here as a barrier to relitigation of the jurisdictional issue. Issue preclusion is invoked here as a bar against Armstrong's collateral attack upon the judgment based on an alleged facial jurisdictional defect or infirmity which has been previously "fairly and fully" litigated. *Bruce v. Miller,* Okl., 360 P.2d 508, 512 [1961]; *Brett v. Fielder et al.,* 136 Okl. 222, 277 P. 216, 217 [1929]; syllabus 4 in *Tippins v. Turben,* 162 Okl. 136, 19 P.2d 605, 608 [1933]; *McDuffie v. Geiser Mfg. Co.,* 41 Okl. 488, 138 P. 1029, 1031–1032 [1913]; *White v. White,* Okl., 607 P.2d 700, 702 [1980] (Opala, J., concurring in result); see also *Dryden v. United States,* 237 F.2d 517 [5th Cir.1956]; *Lewis v. Carver,* 237 F.2d 516 [10th Cir.1956].

## A. *The federal-court judgment is not facially void for want of subject matter jurisdiction*

It is clear that the federal court had subject matter jurisdiction in the original case brought by Armstrong. The terms of 28 U.S.C. § 1331 vest the federal district court with subject matter jurisdiction of all civil actions arising under the constitution, laws or treaties of the United States. The 1947 Act is a law of the United States promulgated by the Congress. Armstrong's asserted right of possession is claimed under that federal law; thus subject matter jurisdiction was vested in the federal district court.[12] The United States Court of Appeals for the Tenth Circuit explicitly noted that the construction of a federal statute is a matter of federal law.[13]

Armstrong's assertion that the prior judgment is void for want of jurisdiction is based on two Oklahoma cases: *Neal v. Travelers Insurance Co.*[14] and *Tidal Oil Co. v. Flanagan.*[15] These and other cases in a continuing line of authority are inapplicable to the facts before us now. *Neal* dealt with a state court's lack of jurisdiction to foreclose a real estate mortgage on inherited, restricted Indian lands, which mortgage was not approved as required by Congress. *Tidal Oil* deals with state courts' lack of jurisdiction to quiet title to minor Indians' allotted land where a conveyance was executed in violation of federal statutes. These cases are not authority in the case at bar. They deal with the jurisdiction *of state courts*. The question for us here deals with the *jurisdiction of federal courts*, not of Oklahoma state courts, to entertain a dispute over the meaning of a federal statute as it affects transactions concerning Indian lands. This issue is one of federal law. It hence lies within the cognizance of federal courts.

Even if the issue of subject matter jurisdiction in the federal courts had not been fully and fairly litigated, Armstrong's collateral attack still could not be successful. The defect relied on does not appear on the face of the record proper[16] which alone is the target of her collateral attack. Armstrong was required to, and did plead in her petition, the grounds for invoking federal-court jurisdiction. The federal district court *found* as a matter of law that it had jurisdiction of the subject matter before it. It thus could adjudicate all issues and determine the rights of all parties.[17]

## B. *Armstrong Raised and Fully Litigated the Question of the Federal Court's Jurisdiction to Render the Judgment*

Armstrong collaterally attacks the decision of the federal court on the basis

---

**12.** *Oneida Indian Nation of New York v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 [1974]. *Begay v. Albers,* 721 F.2d 1274, 1277 [10th Cir.1983], held that United States district courts have subject matter jurisdiction over Indian allottees' suits to cancel forged deeds issued in violation of congressional restrictions. In *Vinson v. Graham,* 44 F.2d 772, 775 [10th Cir.1930], *cert. den.* 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1435 [1930], the court held that 28 U.S.C. § 1331 confers federal jurisdiction to determine if deed by Indian allottee was valid in light of congressional restrictions. The construction and application of a federal statute is a matter of federal law which creates subject matter jurisdiction in federal courts. *Johnson v. United States,* 64 F.2d 674, 677 [10th Cir.1933]; *Jefferson v. Gypsy Oil Co.,* 27 F.2d 304, 305 [8th Cir.1928]. As there was clearly subject matter jurisdiction, the judgment of the federal district court was not facially void.

**13.** *Armstrong v. Maple Leaf Apartments,* supra note 4, 620 F.2d at 473.

**14.** 188 Okl. 131, 106 P.2d 811 [1940].

**15.** 87 Okl. 231, 209 P. 729 [1922].

**16.** *Armstrong v. Maple Leaf Apartments, Ltd.,* supra note 4, 436 F.Supp. at 1141.

**17.** When a collateral attack on a judgment is based on its facial invalidity, the fatal defect must appear from an inspection of the judgment roll. *Dana P. v. State,* Okl., 656 P.2d 253, 256 [1983]; *Barton v. Alpine Investments, Inc.,* Okl., 596 P.2d 532, 534 [1979]; *Farmers Union Co-Operative Royalty Co. v. Woodward,* Okl., 515 P.2d 1381, 1384 [1973]; *Cassina v. Jones,* Okl., 340 P.2d 482, 484–485 [1959]; *Fitzsimmons v. City of Oklahoma City,* 192 Okl. 248, 135 P.2d 340, 342 [1942]; see also *Coleman v. Court of Appeals, Div. No. Two, etc.,* 550 F.Supp. 681, 684 [W.D. Okl.1980] and *Jefferson v. Gypsy Oil Co.,* supra note 12 at 307.

that the prior litigation is facially void for want of jurisdictional power to render the particular judgment rendered.[18] In her brief-in-chief and reply brief to the Tenth Circuit Court of Appeals, she squarely raised the issue of the federal court's lack of jurisdiction to render a judgment which, she argued, gave approval to the conveyance of restricted land. More specifically, in Proposition II of her brief-in-chief she argued that although the 1947 Act gives exclusive jurisdiction to approve conveyances of restricted Indian lands to the state county court, the federal district court "presumed to approve the deed" to Becko,[19] and in Proposition II of her reply brief—titled "The trial court was without jurisdiction to conduct an approval proceeding"—she again objected to the federal court's jurisdiction.[20]

 Armstrong raises again the very same issue, and argues here, that the effect of the federal-court decision was to give approval to a conveyance of restricted Indian lands which the federal court was without power to do. Just as the issue of the federal court's jurisdiction to render the judgment has been raised, so also it has been fairly and fully litigated.[21]

Even if the issue had not been raised and litigated in the federal suit, we do not believe that the judgment would be facially void. The federal court did not attempt to usurp the county court's jurisdiction by either approving or disapproving the conveyance in suit. Instead, it merely determined that two-thirds of Armstrong's interest in the land was not subject to the 1947 Act and that laches operated to bar her claim to the remaining one-third interest.

 It is an elementary tenet of law that once the question of jurisdiction has been raised and decided, issue preclusion operates to disallow any future litigation of that issue.[22] Because the federal district court "fully and fairly" settled the jurisdictional infirmity here under challenge, its relitigation in a collateral attack is barred by issue preclusion. The principle applies even where a court's decision regarding its jurisdiction might constitute a patently erroneous application of the law.[23]

In summary, since Armstrong's challenge to the judgment for a facially-apparent jurisdictional deficiency is closed to her, the attack launched in the present case must fail.

18. A judgment beyond the issues before the court is jurisdictionally defective. *Anglea v. McMaster,* 17 Okl. 501, 87 P. 660 [1906]; *Standard Savings & Loan Ass'n. v. Anthony Wholesale Grocery Co.,* 62 Okl. 242, 162 P. 451, 453 [1917]; *Hoffman v. Webb,* 113 Okl. 150, 240 P. 104, 106 [1925]; *Winters v. Birch,* 169 Okl. 237, 36 P.2d 907, 914 [1934]; *Electrical Research Products v. Haniotis Bros.,* 170 Okl. 144, 39 P.2d 42, 44 [1935]; *Union Oil Co. of California v. Brown,* Okl., 641 P.2d 1106, 1108 [1982].

19. See Brief of Appellant [*Armstrong*], page 39, filed in Tenth Circuit Court case (*Armstrong v. Maple Leaf Apartments,* supra note 4).

20. See Reply Brief of Appellant [*Armstrong*], pages 4–6, filed in Tenth Circuit Court case (*Armstrong v. Maple Leaf Apartments,* supra note 4).

21. Generally, the concept of issue preclusion or collateral estoppel cannot apply when the party

against whom the former decision is interposed did not have a "full and fair opportunity" to litigate the critical issue in the earlier case. *Allen v. McCurry,* supra note 5; *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 [1979]; and *Blonder-Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 [1971]; see also *Underside v. Lathrop,* Okl., 645 P.2d 514, 516 [1982] and annotation in 58 L.Ed.2d 938 [1980].

22. *Bruce v. Miller,* supra note 11; *Brett v. Fielder et al,* supra note 11; *Tippins v. Turben,* supra note 11; *McDuffie v. Geiser Mfg. Co.,* supra note 11; *White v. White,* supra note 11; see also *Dryden v. United States,* supra note 11; *Lewis v. Carver,* supra note 11.

23. *Woodrow v. Ewing,* Okl., 263 P.2d 167, 171 [1953]; *Burgess v. Nail,* 103 F.2d 37, 43 [10th Cir.1939]; *Vinson v. Graham,* supra note 12; *Mid-Continent Pipe Line Co. v. Seminole County Excise Board,* supra note 10.

## II

### CLAIM PRECLUSION IS APPLICABLE TO PREVENT RELITIGATION OF ARMSTRONG'S CLAIMS TO THE LAND IN SUIT AGAINST THE SAME PARTIES AS THOSE IN PRIOR LITIGATION

 Because issue preclusion raises an insurmountable barrier to a collateral attack for the alleged jurisdictional deficiencies in the federal judgment, claim preclusion is available against Armstrong's attempt to relitigate her claim to the disputed land in the instant state-court action. Under the doctrine of claim preclusion, a final judgment on the merits bars a subsequent suit on the same cause of action.[24] Armstrong's land claims pressed by her in the federal and state courts are substantially identical. The only way she could avoid the effect of claim preclusion as a bar to the claims she raised against the same parties in her first lawsuit would be by asserting that the prior judgment was void for want of some jurisdictional element that has not been fully and fairly litigated as a disputed issue between the parties. As the federal-court judgment was impervious to Armstrong's collateral attack, the trial court properly rendered summary judgment against her.

Judgment affirmed.

All Justices concur.

---

24. *Bruce v. Miller,* supra note 11 at 511–512.