OKLAHOMA INDEPENDENT PETRO-LEUM ASSOCIATION, P.S.E.C., Inc. and Moran–Kahn Oil, Appellants,

v.

Joe YOUNGKER, Lincoln County Assessor, Don Sporleder, Lincoln County Treasurer, and Michael C. Turpen, Attorney General of Oklahoma, Appellees.

No. 63376.

Supreme Court of Oklahoma.

Dec. 20, 1988.

Rehearing Granted in Part and Denied in Part Feb. 21, 1989.

Bill Dawson, Dawson, Cadenhead & Kite, Seminole, for appellants.

Bill Roberson, Dist. Atty., Chandler, for appellees.

Michael C. Turpen, Atty. Gen., John D. Rothman, Asst. Atty. Gen., Oklahoma City, for appellee-intervenor.

SUMMERS, Justice.

In a companion case[1] we ruled that a well used for disposal of salt water from oil and gas operations was exempt from ad valorem taxation by reason of the operator's payment of gross production taxes,[2] but that such exemption did not extend to that proportion of the disposal well attributable to the disposition of salt water from a lease separate and apart from that on which the well sat.

Left unresolved were two questions which we now address:

---

1. *Cumberland Operating Co. v. Ogez,* 769 P.2d 105 (1988).

2. Gross production taxes are established by 68 O.S.Supp.1988 § 1001(b) as follows:

   Except as otherwise exempted pursuant to subsection (d) of this section, there is hereby levied upon the production petroleum or oth-

er crude or mineral oil a tax equal to seven percent (7%) of the gross value of the production petroleum or other crude or mineral oil ... and a tax equal to seven percent (7%) of the gross value of the production of natural gas and/or casinghead gas ...

(1) What is the date that governs when property used in oil and gas production should be considered exempt from ad valorem taxation?

(2) Must taxpayers annually list for ad valorem tax purposes all equipment used in oil and gas production?

▮▮ The district court by Order of August 16, 1984 held (1) that January first marks the date upon which gross production tax must have been levied in order to trigger application of 68 O.S. § 1001(i),[3] that being the section that exempts certain property from ad valorem taxes, and (2) that the taxpayers must annually list all oil and gas producing machinery and equipment with the assessor. The present confusion arises from the interplay of the applicable statutes, as well as from two lines of seemingly inconsistent cases. Today we hold that gross production tax which becomes due for the month of January triggers application of the exempting statute, and any property not qualified for treatment under the exemption must be listed for assessment ad valorem.

Both this matter and the companion *Cumberland* case began as declaratory judgment actions in Lincoln County after the Attorney General[4] issued his Opinion No. 83–123 on June 29, 1983. Therein he opined that machinery and equipment involved in the production of oil and gas are not subject to ad valorem taxation for the ad valorem tax year beginning July 1 only if gross production tax was levied on oil or gas produced thereby during the gross production tax month covering the preceeding January 1. The appellants, Oklahoma Independent Petroleum Producers Assn., and two oil producers, plaintiffs below, contend that the language of 68 O.S.Supp.1988

§ 1001(h) permits substitution of gross production tax for ad valorem tax if production and taxation occur *any time during the year*, and that the January first date, which marks the statutory assessment date for ad valorem taxation, fails to apply to gross production taxation.

The confusion is understandable. The statutory scheme for taxing personal property ad valorem rotates around a fiscal year, commencing July 1. The property must be listed and assessed as of January 1 preceeding the fiscal year. Okla. Const. Art. 10, § 1; 68 O.S.1981 § 2427(a); *Appeal of Crescent Precision Products, Inc.,* 516 P.2d 275, 277 (Okla.1973). A statutory exemption to ad valorem taxability exists for property "actually necessary and being used and in use in the production of ... oil ... or ... gas," 68 O.S.Supp.1988 § 1001(i), provided that gross production tax is paid on the oil and gas produced with the aid of the property sought to be exempted. The gross production tax, however, which is "in lieu of" ad valorem taxes, 68 O.S.Supp.1988 § 1001(h)[5] is in no way tied to a fiscal year reporting system. Rather it becomes "due on the first day of each calendar month on all ... oil ... or ... gas produced in and saved during the preceding monthly period...." 68 O.S.1981 § 1009(b).

This case must decide the mechanics for harmonizing interplay between the two tax schemes, and we must determine when gross production tax must have been levied and eventually paid in order to trigger the exempting provisions of section 1001(i). Several cases appear to support the Attorney General's position that January 1 is the date by which gross production tax must have been levied in order for the substitute tax to apply. See, e.g. *In re: Sinclair*

---

**3.** The pertinent part provides:

No equipment, material or property shall be exempt from the payment of ad valorem tax by reason of the payment of the gross production tax as herein provided except such equipment, machinery, tools, material or property as is actually necessary and being used and in use in the production of ... petroleum or other crude oil, or other mineral oil or of natural gas and casinghead gas ... 68 O.S. Supp.1988 § 1001(i).

**4.** The Attorney General has entered his appearance herein in support of the correctness of that opinion.

**5.** The relevant provisions state:

The payment of taxes herein levied shall be in full, and in lieu of all taxes by the state, counties, cities, towns, school districts and other municipalities ... for petroleum or other crude oil or other mineral oil, or for natural gas and/or casinghead gas ... 68 O.S. Supp.1988 § 1001(h).

*Prairie Oil Company*, 53 P.2d 221 (Okla. 1935); *Board of County Commissioners v. Central Baptist Church*, 136 Okl. 99, 276 P.726 (1929); *In re: Assessment of Champlin Refining Company*, 186 Okl. 625, 99 P.2d 880 (1940).

Read together, these cases support the January first theory. In *Sinclair*, this court reversed the trial court's order in favor of the treasurer of Seminole County, and held that oil in "stock tanks" which was being tested and valued on January first was not subject to ad valorem taxes because the oil was not yet in storage, i.e. the oil was still necessary and being used in the production process. The court examined the existing statutes (predecessors to 68 O.S., 1001 et seq.), and determined that

> the taxable status of property for the purpose of assessment for ad valorem purposes is fixed and determined as of January 1, and the machinery, appliances, and equipment used in the production of oil and subject to gross production tax on January 1 of any year are not subject to assessment ad valorem for taxes for the succeeding fiscal year. *Sinclair,* supra at 222 (court's syllabus; emphasis added)

The court then analyzed the statutes which required that all taxable property be assessed ad valorem, and determined that those sections meant

> that property, to be legally assessed ad valorem, must be within that class of property subject to such taxation on the assessment day. Assessing officials may not look beyond the time fixed for assessment in an effort to ascertain the taxability of property, but the question of its taxability must be determined as of the time fixed by law for such purpose. *Sinclair* at 227.

In explaining its ruling, the court cited its previous ruling in *Board of County Commissioners v. Central Baptist Church*, 136 Okl. 99, 276 P. 726 (1929). Here, the court held that the ownership status of property on January 1 subjected the property at issue to ad valorem taxation notwithstanding the fact that the property was transferred to a non-taxable pur-

pose before the county excise board had approved the levies for Commanche County for the fiscal year. In so holding, the court found that *"the purpose and object of said section is to fix a definite date or period upon or from which to determine the taxable status of property."* *Central Baptist Church* 276 P.2d at 729. (our emphasis)

The Attorney General, in attempting to reconcile the adamant language of those cases and ad valorem statutes with the language of 68 O.S.1981 § 1009 asserted that the provisions of the gross production scheme can only be triggered if the tax is levied during the gross production month covering the January first ad valorem assessment date. As earlier noted, gross production tax falls due "on the first day of each calendar month on all ... oil ... or ... gas ... produced in and saved during the preeceeding monthly period...." 68 O.S.Supp.1987 § 1009(b).

The *Champlin Refining* case further supports the theory that January first controls:

> [O]il in storage on January 1 of any year is properly assessed for general ad valorem taxation for the next succeeding fiscal year beginning the following July 1, regardless, when, before January 1, the oil was produced and the production tax thereon paid. *Champlin* [99 P.2d] at 881.

The rule continued to evolve with the case of *Colonial Royalties v. Sitler*, 298 P.2d 1060 (Okla.1956). Here, the validity of a tax resale deed turned upon unpaid ad valorem taxes on mineral interest in the disputed property. Colonial Royalties contended that the land was not subject to ad valorem taxes because gross production tax was paid on oil produced thereon through September immediately preeceeding the January first assessment. The court however held that

> payment of a gross production tax on oil or gas produced from land prior to January 1 does not exclude or exempt the land, including the mineral interest therein, from assessment for ad valorem tax as of January 1 for the ensuing fiscal

year commencing July 1 where no production of oil or gas is had therefrom on or after January 1. *Colonial Royalties* at 1061 (court's syllabus).

Read together then these cases enunciate the general rule that gross production tax levied on January first permits substitution of gross production for ad valorem tax, and that a change in the tax status of the property in question before or after January first will not trigger application of 68 O.S.Supp.1988 § 1001(h) (the "in lieu of" provision). The "on or after" language quoted above in *Colonial Royalties,* however, provides the seed from which springs some confusion.

The court's language that property may escape ad valorem taxation with production occurring "on or after January 1", *Colonial Royalties,* supra at 1061, had its roots in an earlier case as a theory propounded by the Texas Company. This argument proposed that since the gross production statute permits substitution of gross production for ad valorem taxes upon oil "during the tax year in which the same is produced", payment of gross production tax on July 1 and *before* the ad valorem tax is actually levied triggers the "in lieu of" provisions of the gross production statutes. *In re: Texas Company Assessment,* 168 Okl. 94, 31 P.2d 929, 930 (1934) (citing Section 12434 O.S.1931, the predecessor to 68 O.S. § 1001(h)). This holding contravenes *Sinclair.*

Further, in 1973, this court refused to permit the plaintiff/taxpayer to gain a tax advantage by application of a new constitutional provision in Art. 10, § 6A, which provision became effective in September of 1968 following the July first levy of ad valorem taxes for that year. *Appeal of Crescent Precision Products, Inc.,* 516

P.2d 275 (Okla.1973) (constitutional provision exempts from taxation property which is held in the stream of commerce within the state for fewer than nine months). We ruled that since the fiscal year begins on July first, and "since the constitutional amendment became effective after the beginning of the ... fiscal year, the property in question was subject to taxation for the ... taxable year." *Crescent* at 277.

Appellants here would argue that together, *Crescent* and *Texas Company* stand for the proposition that tax status of property does not become fixed until the actual levy of ad valorem taxes, which may even occur after July first. Reading all of the cited authority together, this cannot be the case. "There must be some fixed period during the progress of this taxation at which it can be determined as to whether property is taxable or not taxable." *Central Baptist Church,* supra 276 P.2d at 729.

The ad valorem process begins in January when all taxable personal property shall be assessed. 68 O.S.1981 § 2427(a).[6] The normal process first requires the County Assessor to deliver the assessment roll to the County Board of Equilization on or before the fourth Monday in April of each year. The tax roll and abstract must then be delivered to the tax commission by the third Monday in June of each year. 68 O.S.1981 §§ 2471, 2459. In order for this process to be carried out properly, *Sinclair* and *Central Baptist Church* must control, and under the law applicable to this case, the rule must be that in order to exempt property from ad valorem tax, gross production tax must be levied for the month of January, the month containing the date upon which the ad valorem tax process begins.[7]

---

**6.** This section requires that "[a]ll taxable personal property, except intangible personal property, shall be listed and assessesd each year ... as of the first day of January." 68 O.S.1981 § 2427(a).

**7.** We are not aware of a recent enactment, effective July 30, 1985, which, though not affecting the present litigation, addresses itself to exemption of property from ad valorem taxation. Found on Okl.Sess.L.1985, Ch. 345, § 16, and

codified in 68 O.S.Supp.1985 § 1101.1, the new enactment provides in pertinent part:

"The Oklahoma Tax Commission shall adopt rules and regulations which establish guidelines for the determination of property exempt from ad valorem taxation pursuant to the provisions of subsections (g) and (h) of Section 1001 of Title 68 of the Oklahoma Statutes. Said guidelines shall include, but are not limited to, the following:

\* \* \*

This interpretation is a reasonable construction which treats fairly two taxing statutes, each enacted without the other in mind. We must construe legislative acts in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each. Thus, where parts of a statute reasonably are susceptible of a construction which will give effect to both, without doing violence to either, such construction should be adopted. *Home–Stake Production Co. v. Board of Equalization*, 416 P.2d 917, 926 (Okla. 1966).

In so construing these statutes, we overrule the portions of *In Re: Texas Company Assessment*, 168 Okl. 94, 31 P.2d 929 (1934), *Colonial Royalties Co. v. Sitler*, 298 P.2d 1060 (Okla.1956), and *Appeal of Crescent Precision Products*, 516 P.2d 275 (Okla.1973) which are inconsistent with this pronouncement.

With application of January first as the date which triggers the provisions of either the gross production or ad valorem statutes, the second issue resolves itself. Without question, the statute mandates that "taxable" property be listed and assessed ad valorem on January first. 68 O.S.1981 § 2427(a). Property owners are thereby required annually to provide the assessor with information sufficient for him/her to assess the tax status of any and all taxable property. Section 2431 of Title 68 provides that this information may be furnished to the assessor either in person, or by transmitting a list of all personal property to the assessor.

However, property used in the production of oil or gas subject to gross production tax for the month of January is exempt, thus not "taxable", and consequently not subject to the requirements of listing and assessment. In that respect the judg-

ment of the District Court is reversed. Any and all property not so exempt is subject to listing and assessment requirements under § 2427(a). In all other respects the judgment of the lower court is thus affirmed.

■ This ruling is to be prospectively applied from and after the date of mandate except as to the parties in this case and any other cases in which the questions addressed herein are presently being litigated.

HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS and OPALA, JJ., concur.

DOOLIN, C.J., and ALMA WILSON, J., dissent.

KAUGER, J., recused.

DOOLIN, Chief Justice, dissenting.

The majority argues *Sinclair* stands for the proposition that if gross production taxes had not been levied on the property during the month of January, its taxable status as ad valorem property would have been frozen on January 1. Thus, the Attorney General reasons, "the 'in lieu of' provisions of 68 O.S.1981, § 1001(g) are triggered only if gross production tax is levied on oil or gas produced on January 1 preceding the subsequent ad valorem year." I disagree.

January 1 is not an immutable date and we must consider the relationship between the two taxing systems. It is the production of oil and gas which "triggers" the gross production tax. *Apache Gas Products v. Okla. Tax Comm.*, 509 P.2d 109, 113–114 (Okl.1973). If the oil and gas producing property is subjected to gross production taxes anytime during the July 1—June 30 taxable year, it may not be classified as ad valorem property. To subject oil

2. 'Payment of gross production tax' means payment of the tax levied by Section 1001 of Title 68 of the Oklahoma Statutes on production during the calendar year immediately prior to January 1 of the year for which the assessment or valuation is made or on production during at least one of the first three (3) months of the year for which the assessment or valuation is made; ..."

"Absent a plain legislative intent to the contrary, statutes are generally presumed to operate *prospectively only*." [Emphasis added.] *Trinity Broadcasting Corp. v. Leeco Oil Co.*, Okl., 692 P.2d 1364, 1366 [1985]. Consequently, the cited statute does not affect the parties or issues before us.

and gas producers to ad valorem taxation merely because of a historical accident that gross production taxes were not assessed for the month of January would render nugatory the clear language of Section 1001(g) that gross production taxes in lieu of ad valorem taxes shall apply "during the tax year in which [oil and gas] is produced." The Attorney General's interpretation could result in impermissible double taxation for that property "actually necessary and being used and in use" for the production of oil and gas. The proper forum to resolve the assessment problem is the legislative branch of government, not the judicial or executive branches.

I conclude that ad valorem taxes declared and levied January 1, 1988 for the year July 1988 through June 1989 subjects "production" to double taxation from July 1988 to June 1989.

I am authorized to say that Justice ALMA WILSON joins in these views.