**Grant FEELY, Appellant,**

v.

**William H. DAVIS, Appellee.**

Nos. 69983, 70356.

Supreme Court of Oklahoma.

Dec. 19, 1989.

James R. Cox, and Blakley, Henneke, Maxey & McNaughton by Thomas G. Blakley, Enid, for appellant.

Watson & McKenzie by H.B. Watson, Jr., Sharon Taylor Thomas, Janis W. Preslar, Oklahoma City, for appellee.

HODGES, Justice.

In May of 1981 Grant Feely executed an oil and gas lease covering his interest in the NW/4 of Section 23, Township 29 North, Range 7 West, I.M., Grant County, Oklahoma, in favor of Texas Oil and Gas Corp. ("TXO"). In January, 1984 William H. Davis received an Oklahoma Corporation Commission ("Commission") order establishing 320 acre lay-down units for the production of gas from the Tonkawa sand underlying the north half (N/2) of said Section 23. This spacing was pursuant to Davis' 1981 discovery of the Manchester Gas Field (which underlies the general area, and encompasses Section 23) and his long term plan to develop the field in an orderly fashion thereby maximizing total field production. A subsequent Commission pooling order named Davis as operator of the Grant No. 1 well (the unit well for the N/2 of Section 23) which was drilled in the NW/4 of Section 23. TXO, Davis and the other working interest owners of the Grant No. 1 well are parties to a Joint Operating Agreement executed in May of 1984 covering the N/2 of Section 23.

Prior to the drilling of the Grant No. 1, Davis had completed five other wells in nearby units, all as a part of his area development plan. Subsequent to the completion of the Grant No. 1, TXO, as operator, drilled and completed two wells in Section 14, Township 29 North, Range 7 West I.M., Grant County, Oklahoma, the offsetting section directly north of Section 23. The subject controversy involves one of these offsetting TXO wells, known as the Watkins well, which is located in the south half of said Section 14. Both Davis and Feely own separate interests in not only the Grant No. 1 well and the Watkins well but also the other offsetting wells in the Manchester field.

At trial Feely alleged that improper completion and production of the Grant No. 1 well has resulted in drainage of the N/2 of Section 23 by the offsetting wells. Davis presented evidence showing that he acted at all times as a prudent operator and that the majority of the drainage from the N/2 of Section 23 was caused by the high production rates of the Watkins well which is operated by TXO (Feely's lessee in the Grant No. 1 well) who is a party to the Joint Operating Agreement covering the Grant No. 1 well. A jury verdict was returned for Davis.

After trial, pursuant to Davis' motion, costs were assessed against Feely in the amount of $9,375.16, the court having found the motion to be confessed. Feely's motion to vacate the costs judgment was then denied and the resulting appeal of that denial was consolidated with the appeal of the jury verdict.

I.

Feely initially raises the issue of whether the trial judge erred in admitting evidence of production income from wells other than the Grant No. 1 after the court had granted Feely's motion in limine ruling such evidence should be excluded. It is well established that a motion in limine ruling is advisory in nature and, as it occurs prior to the actual introduction at trial of the challenged evidence, the trial judge is free at trial to finally rule on the admissibility of the evidence after considering the other facts and circumstances brought out as the case unfolds. Any error on the part of the trial judge occurs when the final ruling on the evidence is made at trial. In no way is the trial court bound by its preliminary ruling on the actual motion in limine. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s*, 713 P.2d 572 (Okla.1986). The question then becomes whether the

trial judge erred in allowing the evidence at trial of Feely's production income from wells other than the Grant No. 1 well.

The trial court heard arguments from both sides at trial regarding whether the production income information should be admitted and for what purpose. The ruling of the trial judge was that the evidence be admitted specifically for the purpose of determining if any uncompensated drainage had occurred thus entitling Feely to damages. This is evidenced by the following portion of the transcript:

THE COURT: .... I think Mr. Watson is right and I think it is an element of damage; the question is how is he damaged. And let's see, I ruled on the motion in limine that you couldn't put in any evidence as to revenues from any well but the Grant. So what evidence do you have to present?

MR. WATSON: On the issue of drainage, Your Honor?

THE COURT: On the issue of damage. You're stipulating there was drainage, aren't you?

MR. WATSON: That there's been drainage in every unit but I've tried to distinguish—there's no liability for drainage per se; you have to have uncompensated drainage. There's no way that anyone can control the molecules of gas in that gas reservoir and—

THE COURT: You're stipulating that there was drainage.

MR. WATSON: Stipulating there's drainage in every gas reservoir but I am not—

THE COURT: Well isn't this a gas reservoir?

MR. WATSON: Yes, sir.

THE COURT: So are you stipulating that there was drainage?

MR. WATSON: Yes, sir, but I want to clarify what I mean. There are two kinds of drainage; uncompensated drainage for which a party can recover compensation and compensated drainage to which a party cannot recover compensation. And I am not stipulating that there has been uncompensated drainage.

THE COURT: Okay. So what evidence?

MR. WATSON: Well, our evidence will be, Your Honor, that there has been no drainage toward the Davis operated wells. That the thieving well in this reservoir is the TXO Watkins well and it's not operated by Davis. And Mr. Feely owns an interest in it and has been compensated for any gas that may have migrated over to that unit.

THE COURT: Okay.

The evidence of production income had to be admitted to show with reasonable certainty whether damage had been sustained by Feely. Without the evidence there was no basis for compensation of the actual loss. Therefore the admission of the evidence was proper and is sustained.

█ We reject the appellant's theory that the collateral source rule should be applied in this situation. In Oklahoma a wrongdoer who commits a tort is liable for the whole loss caused by his actions and any compensation received by the injured party from a collateral source, wholly independent of the wrongdoer, will not lessen the damages recoverable from the wrongdoer. *Denco Bus Lines v. Hargis*, 204 Okl. 339, 229 P.2d 560 (1951). The subject case is not a case to which the collateral source rule is applicable. This is due primarily to the fact that the landowner or mineral owner only has an exclusive right to attempt to gain possession of the oil and gas underlying the owner's property. No absolute title to oil and gas is obtained until those minerals are reduced to actual possession. *Frost v. Ponca City*, 541 P.2d 1321 (Okla.1975). Thus, an operator of an oil and gas well does not owe a mineral interest owner any production income until actual production of minerals has taken place and the minerals have been reduced to possession. Here, Feely has been paid for the oil and gas he allegedly "lost" to the offsetting wells due to the fact that he also owns an interest in those wells and has thus received compensation for drainage that may have occurred from the Grant No. 1 well. It has only been in cases where the injured party had no interest in the draining offset wells that uncompensated drainage has been found to have occurred and the offending les-

see/operator has been held liable under a theory of willful fraudulent or grossly negligent breach of the lesser's implied contracted duty to protect the lessor's mineral estate from drainage. *Spaeth v. Union Oil Co. of California,* 710 F.2d 1455 (10th Cir.1983).

■ We further find the instruction given to the jury regarding the computation of damages to be proper in this same regard. The instruction to the jury allowed the consideration of that production income received by Feely from the Watkins well that could be attributed to drainage from the Grant No. 1 well. This procedure for computation of damages is wholly in keeping with our past decisions. *Indian Territory Illuminating Oil Co. v. Rosamond,* 190 Okl. 46, 120 P.2d 349 (1941).

### II.

Feely next objects to the trial court allowing the jury to be instructed on the "prudent operator defense." The instruction given reads as follows:

> You are instructed that in regard to plaintiff's claim of drainage, the defendant was required to take only those actions which would have been taken by a reasonably prudent operator under the circumstances, with due regard to the interest of all parties in the unit. If you find that the defendant's actions were those of a reasonable prudent operator under the circumstances, having due regard for the interest of all parties in the unit, you must find for the defendant and against the plaintiff as to drainage.

Feely argues that this defense and consequent instruction were invalid and prejudicial citing several cases from other jurisdictions that specifically find the prudent operator rule inapplicable where an operator of a lease also operates adjacent leases. In effect, Feely urges this Court to adopt a view of strict liability whenever drainage occurs from one lease to the next despite the fact that Feely owns minerals in the offsetting leases. This is an untenable proposition.

We have found that the better position is to allow an operator to put on evidence of acting as a reasonable and prudent operator and then sustain whatever jury verdict is supported by the evidence. *Spaeth,* supra. See also *Crocker v. Humble Oil & Refining Company,* 419 P.2d 265 (Okla. 1965). This does not shift the burden of proof from the plaintiff but, rather, allows the defendant to answer charges of incompetence and breach of duty.

■ The facts established in the subject case support the jury's finding that Davis acted in a reasonable and prudent manner when faced with the possible drainage of the Grant No. 1 well. He unsuccessfully sought relief from the Oklahoma Corporation Commission through applications for field rules for the orderly production of the Manchester field, unitization of the field and, finally, an application requesting a reduction in allowable on the Watkins well. Interestingly, a workover proposal circulated by Davis was also rejected by the working interest owners of the Grant No. 1 well. After these futile attempts to protect the Grant No. 1 well, he sought relief in the form of a replacement well application which was finally granted allowing Davis to drill a well in the NW/4NW/4 of Section 23. It must be noted that all of the previously mentioned applications were opposed at the Corporation Commission by, among others, TXO, Feely's lessee in the Grant No. 1 well and the operator of the Watkins well. Based on these uncontroverted facts it would appear that the jury verdict finding Davis free of any liability should not be disturbed on appeal.

### III.

The final issue is whether the trial court's refusal to vacate its order taxing costs was error. In accordance with the order of this Court denying Davis' motion to dismiss Feely's petition in error, the appeal of this issue is limited to a review of the trial court's handling of the motion to vacate only.

■ The trial court assessed costs against Feely by summary default disposition due to Feely's failure to timely re-

spond to Davis' motion for costs. This decision was based on Rule 4(e) of the Rules of the District Courts of Oklahoma which reads as follows:

e. Any party opposing a motion, except those enumerated in Section C above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days of the service of the motion, or the motion shall be deemed confessed.

This Court has consistently viewed default judgments with disfavor and prefers, whenever possible, that litigating parties be allowed their day in court so that a decision on the merits may be reached. *Midkiff v. Luckey,* 412 P.2d 175 (Okla. 1966). A petition to vacate a default judgment requires that sound discretion be exercised by the trial court. *Chesnut v. Billings,* 452 P.2d 138 (Okla.1969). In reviewing the circumstances before us it is important to note that while Feely's response was delivered to counsel for Davis ten days late, this was still three days prior to the hearing date set for Davis' motion to tax costs. The hearing took place as originally scheduled and the post judgment default disposition was rendered. The failure of Feely to respond did not delay any judicial proceedings nor did it harm the interests of Davis. While we believe that court matters should be attended to with all due diligence on the part of all litigants and judicial personnel involved, a fair and reasonable opportunity to be heard is also of great importance. *Beck v. Jarrett,* 363 P.2d 215 (Okla.1961).

The question of assessment of costs and the basis for awarding such costs raise issues that deserve serious consideration. Such full consideration is not given when a summary default disposition based on the lack of a timely response, is rendered. We find that the trial court abused its discretion in granting Davis' motion to tax costs by a summary default disposition. Therefore, the trial court's order is vacated and the case is remanded for an evidentiary hearing on the motion to tax costs.

AFFIRMED IN PART; REVERSE TRIAL COURT'S ORDER TAXING COSTS;

CASE REMANDED FOR HEARING ON COSTS.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

SIMMS, J., concurs in parts I and II; dissents as to part III.