UNION OIL COMPANY
OF CALIFORNIA,
Appellee,

v.

BOARD OF EQUALIZATION OF BECK-HAM COUNTY, Oklahoma, Board of Tax Roll Corrections of Beckham County, Oklahoma, Appellants.

No. 83372.

Supreme Court of Oklahoma.

March 19, 1996.

As corrected March 20, 1996.

Brian L. Peterson and Frank H. McGregor, McKenzie, Moffett, Elias & Books, Oklahoma City, for Appellee.

SUMMERS, Justice.

Did a 1992 judgment in favor of a taxpayer against the local tax officials bind those same officials as to the 1993 taxes on the issue which was the subject of the 1992 judgment when no changes had occurred in either the law or the circumstances? The trial court ruled that it did, and held again for the taxpayer. We agree.

In this case Union Oil Company was assessed ad valorem taxes in March of 1993 for personal property it owned in Beckham County. The property, known as the Bruner Plant, consisted of a gas sweetening facility, a sulfur recovery facility, and a dehydration facility, and was located at the Bruner No. 2–33 well site where Union was the operator. Union responded by filing a protest with the Board of Equalization of Beckham County, and by filing a complaint with the Board of Tax Roll Corrections. Union's efforts were unsuccessful, and it appealed the decisions of the Boards to the District Court. Union moved for summary judgment and argued (1) that the 1993 assessment was barred by the doctrine of estoppel by judgment and, (2) that the property was exempt from assessment for ad valorem taxes because it was used in the production of oil and gas. The trial court accepted Union's first argument, and granted summary judgment.

Union's first argument was based upon a 1992 judgment in Beckham County, where Union had challenged an assessment on the same property. The 1992 judgment was entered in favor of Union and against both the Board of Equalization of Beckham County and the Board of Tax Roll Corrections of Beckham County.

Union's second argument was that because the Bruner Plant was necessary for the production of the natural gas, and the gas it was used to produce was subject to gross production tax, the plant was exempt from *ad valorem* tax.[1] That was the argument on which

Richard L. Dugger, District Attorney, Jack L. Atkinson, Asst. District Attorney, Arapaho, David Hudson, General Counsel, William F. O'Brien and David Allen Miley, Asst. General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellants.

1. See 68 O.S.1991 §§ 1001(j)(k); *Oklahoma Independent Petroleum Assn v. Youngker,* 769 P.2d 109 (Okla.1988).

it had won the earlier judgment. The tax officials argued that the property was not necessary to produce the gas. Since we agree with Union as to the estoppel effect of the 1992 judgment we do not reach the second issue as to the nature of the Bruner Plant.

On the summary judgment materials the District Court determined that in 1992 it had indeed entered a judgment against the Boards of Equalization and Tax Roll Corrections in favor of Union Oil Company. The Court concluded that the issue in the 1992 case had been whether the Bruner Plant was necessary for the production of gas and thereby exempt from ad valorem taxes. The judge concluded that the former judgment settled the issue, that the Bruner Plant was exempt, and ordered the officials to remove the property from the tax rolls and refund the money paid under protest.

The tax people appealed. The Court of Appeals reversed, finding that the earlier judgment came about because of the County's failure to respond to a motion for summary judgment, and that the first judgment should not have been given estoppel treatment. We have granted certiorari.

The tax officials argue this: (1) The 1992 judgment was the result of a default judgment; the officials' had failed to respond to Union's motion for summary judgment. (2) Property tax exemptions should not be created by default judgments. (3) Estoppel by judgment should be narrowly applied in tax cases. (4) Tax officials are not bound by the former officials' acts when outside the official's authority.

In 1948 the United States Supreme Court explained how claims of res judicata should be analyzed for tax cases. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Union relies on *Boy Scouts of America, Inc. v. Thompson,* 380 P.2d 705 (Okla.1963). In that case we quoted with approval from both *Sunnen* and a federal case relying upon *Sunnen.* In *Sunnen* the High Court explained that res judicata (claim preclusion) and collateral estoppel (issue preclusion) do apply to tax cases. *Sunnen,* 333 U.S. at 598–599, 68 S.Ct. at 719–720.

■ First, the pleas of res judicata and collateral estoppel are based upon a former adjudication upon the merits of a cause of action. *Dearing v. State ex rel. Commissioners of the Land Office,* 808 P.2d 661, 665 n. 5 (Okla.1991); *Erwin v. Frazier,* 786 P.2d 61, 64 (Okla.1990). The tax officials argue, without citation to authority, that the 1992 judgment is a default judgment not on the merits. They further argue that such judgments are unfavored, and no res judicata effect should be given them. Because we conclude the 1992 judgment was on the merits we need not discuss the res judicata effect of such other judgments.

■ A motion for summary judgment is a request for an adjudication on the merits. *"Since summary judgment is an adjudication on the merits,* affirmative defenses that go to the merits can be raised by this motion." *Martin v. Chapel, Wilkinson, Riggs, and Abney,* 637 P.2d 81, 84 (Okla.1981), (emphasis added). "The main purpose of summary judgment is to avoid useless trials *and at the same time achieve a final determination on the merits."* *Cook v. Bishop,* 764 P.2d 189, 190 (Okla.1988), (emphasis added).

The effect of a party failing to respond to a motion for summary judgment was explained in *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682 (Okla.App.1987), (Approved for Publication by the Supreme Court). In *Spirgis* the plaintiff filed an action for damages resulting from stepping in a pothole, and the defendant filed a motion for summary judgment, arguing that the hazard was an open and obvious danger. Plaintiff failed to respond to the motion. Defendant argued that it was entitled to a default summary judgment and that the merits of its motion need not be examined. *Id.* 743 P.2d at 684. The court rejected that argument.

■ The *Spirgis* court explained that District Court Rule 4(e) deeming motions to be confessed in the absence of a response did not apply to a summary judgment motion pursuant to District Court Rule 13 on the merits of a claim. *Id.* A Rule 4 judgment based upon a party's failure to respond is a type of default judgment. See *Feely v.*

1334

*Davis,* 784 P.2d 1066, 1069–1070 (Okla.1989), where we reversed a default judgment entered for a party's failure to respond to a motion to tax costs. But the granting of a summary judgment motion on the merits of a cause of action is an adjudication on the merits *even when no response is made to the motion.*

> The granting of summary judgment ultimately depends upon a determination by the trial court of whether there is a substantial controversy as to any material fact. *Even when no counter statement has been filed, it is still incumbent upon the trial court to insure that the motion is meritorious.* The trial court must examine the evidentiary materials supporting the motion and if all the material facts are addressed and are supported by admissible evidence, those facts are admitted and judgment for the movant is proper. However, if the movant has not addressed all material facts, or if one or more such facts is not supported by admissible evidence, judgment for the movant is not proper.

*Spirgis,* 743 P.2d at 685. (emphasis added)

Summary judgment on the merits pursuant to Rule 13 where no response is filed is thus unlike a default judgment granted pursuant to Rule 4. The former is based upon the merits of the motion presented, while the latter is simply for a failure to respond. See J. Morris, *Oklahoma Trial Handbook,* § 3.7 at 81 (1995), citing, *Spirgis,* and explaining that in the absence of a response the court considers the summary judgment motion on the merits. A trial court cannot grant summary judgment simply because it is unopposed; it must examine whether the materials offered substantiate granting judgment for the moving party.

The question then becomes whether the 1992 adjudication was in fact a summary judgment on the merits. Our examination in this collateral attack of the 1992 unappealed judgment is limited to the judgment roll as it appears in the appellate record. See *Fent v. Oklahoma Nat. Gas Co.,* 898 P.2d 126, 131–132 (Okla.1994).

Our examination of the record shows this. Union filed two protests in the District Court, which were consolidated by the Court. On March 10, 1992 Union filed its motion for summary judgment. A hearing was held on the motion on April 22, 1992 and the journal entry of the judgment was filed June 10, 1992.

The motion for summary judgment was on file for forty-two days prior to the hearing. The motion was accompanied by affidavits with allegations of facts plus legal arguments asserting that Union's property was exempt from ad valorem taxes, because "the machinery and equipment assessed are actually necessary and being used and in the use in the production of natural gas from the Bruner # 2–33 Well as defined by 68 O.S. § 1001(k) thereby exempting the property from ad valorem taxes under § 1000(j)."[2] A copy of the motion was sent to the office of the District Attorney at the Beckham County Courthouse in Sayre, Oklahoma.

A hearing was held, at which time Union appeared and argued its motion. Defendants appeared, represented by an Assistant District Attorney (not appearing in this appeal). He orally responded to Union's arguments, and stated that he got a copy of Union's motion only two days prior to the time to file a response thereto, and no response had been filed. He stated that this was because the motion was sent to the District Attorney's office in Beckham County, as opposed

---

**2.** The Tax Commission and the Boards argued that the treatment of the gas was not necessary to produce the gas and that it could be brought to the surface, confined, and measured and tested as to its quality. Union presented facts stating that the treatment was necessary to make the gas marketable, and could not be sold to any buyer without the treatment. Although not expressly stated or argued by Union, nor recognized by the tax officials, the essence of Union's argument is that equipment at the wellhead that

is necessary for the purpose of fulfilling the lessee's implied covenant to make the product marketable must also be necessary for the purpose of "production", and thus qualifying for the exemption from ad valorem taxes. See *TXO Production Corp. v. State ex rel. Commissioners of Land Office,* 903 P.2d 259 (Okla.1994) and its discussion of a lessee's duty to produce marketable gas. We need not reach this issue in this appeal due to our disposition on the estoppel claim.

to being sent to him personally at his office in Mangum, Greer County.

The District Judge made a specific finding that the Defendants did not request an extension of time to respond to the motion. He deemed the motion confessed and granted judgment. In the second suit the trial judge made a finding that the Boards had never attempted to vacate the judgment in the first suit.

We are not presented with a situation where a default judgment has been taken without notice. The suits were pending for several months prior to the judgment. No suggestion has been made that the Assistant District Attorney lacked a fair opportunity to either defend the actions or to respond to Union's motion on the merits. The record shows that the Assistant D.A. was familiar with Union's claims. The official notice of the Beckham County Board of Tax Roll Corrections decision sent to Union includes minutes from its meeting where the same Assistant D.A. explained the nature of his legal argument why he thought Union's claim should be denied by that Board. The substance of the motion addressed the merits of Union's claim to an exemption. We conclude that the 1992 judgment was on the merits of Union's claim.

■ The tax officials argue that since the taxes were for different tax years the tax claims are "therefore not susceptible to estoppel."[3] But they rely on two lower federal court opinions dated prior to both *Sunnen* and *Boy Scouts of America, Inc. v. Thompson.* Both the United States Supreme Court in *Sunnen* and this Court in *Boy Scouts of America* have held that tax officials *are* estopped from again adjudicating the same tax issue in a subsequent tax year when the relevant facts are the same, no change in the law has occurred, and the exact same parties are involved in the latter suit as in the former. In *Boy Scouts of America, supra,* we explained that while res judicata applied to proceedings involving the same tax period,

collateral estoppel applied to subsequent tax years. *Id.* at 708. In sum, this argument of the tax officials was rejected in *Boy Scouts of America* and is without merit.

■ The Tax officials next argue that estoppel should not apply because "the State may not be bound by the failure of its public employees' acts or omissions when that act is outside the public employees' actual authority." They argue that the failure of the Assistant District Attorney to respond to the motion for summary judgment on the merits was an act outside his authority. They rely solely on *General Motors v. Oklahoma County Board of Equalization,* 678 P.2d 233 (Okla.1983).

It appears the tax officials are attempting to view this controversy as a direct challenge to an act performed by a government official instead of what it really is, a collateral attack upon a judgment of the District Court. In our case the tax officials are estopped not by an act performed or not performed by a government official, but by a judgment on the merits of the same issue. See *State ex rel. Tharel v. Board of County Commissioners of Creek County,* 107 P.2d 542, 550 (Okla. 1940).

■ The tax officials also argue that if the 1992 judgment is allowed to stand Union will benefit from an exemption not available to other taxpayers. They say that estoppel is not meant to destroy uniform application of the tax laws. Strict uniformity in the application of the tax laws as a reason for limiting the application of estoppel, as argued for by the tax officials, would create an exception that swallows the rule. Such a rule would result in estoppel not being given to trial court judgments. They rely upon *Sunnen,* but *Sunnen* and its progeny show that estoppel is appropriate even when tax officials have become bound, as to a particular issue and taxpayer, when they have failed to appeal or seek proper review of a judgment.

---

**3.** This appeal is governed by Rule 1.203 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.Supp.1993 Ch. 15, App. 2. The briefs on appeal are those filed in the trial court in support and opposition to the motion for summary judg-

ment. The District Attorney represented the Boards in the trial court. Counsel for the Tax Commission appeared for the Boards in both the District Court and this Court.

In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) the Court noted that in government litigation a particular legal issue could be rendered in different courts of appeals with varying results. *Id.* 464 U.S. at 160, 104 S.Ct. at 572. The Court explained that the government could be bound to different results as to different taxpayers: "Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *Id.* The Court then explained that the government could not now undo the consequences of its decision not to appeal a certain judgment it being "bound by that judgment under the principles of res judicata." *Id.* 464 U.S. at 162, 104 S.Ct. at 573. However, the government was not bound in litigating the same issue "in a case involving a litigant who was not a party to the earlier litigation." *Id.*

*Mendoza* shows how litigation involving the federal government in federal courts may result in disparate government treatment of similar parties. This disparate treatment arises from the rights created by the judgments, because the judgments are given res judicata effect. The strict uniformity argued for by the tax officials in our case today is not a reason to deny estoppel effect to a 1992 judgment involving the same property assessed one year later in 1993.

The opinion of the Court of Appeals is vacated. The judgment of the District Court is affirmed.

KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., and HODGES and OPALA, JJ., dissent.

OPALA, Justice, with whom ALMA WILSON, C.J., and HODGES, J., join, dissenting.

Today's pronouncement holds that the Board of Equalization of Beckham County [Board] is *precluded* from relitigating, for a *succeeding* tax year, the question whether the Bruner gas plant of Union Oil Company of California [Union] is exempt from taxation. The court reasons that the identical issue had been litigated and determined by an earlier June 10, 1992 *summary judgment* for Union. I cannot accede to the court's analysis.

While the record reflects an earlier judgment's entry in favor of Union, the judgment roll[1] facially indicates that the process was rested on the Board's *confession of judgment*. It cannot hence be said that in the earlier case the Board was afforded a "full and fair opportunity" to litigate the gas plant's taxability. An opportunity to so do is a *critical predicate* for an earlier judgment's fitness as an issue preclusion bar.

## I

### UNION'S JUNE 10, 1992 JUDGMENT CONSTRUED WITHIN THE FOUR CORNERS OF THE JUDGMENT ROLL

#### A

#### THE ANATOMY OF LITIGATION

After Union's Bruner gas plant was assessed for ad valorem and personal property taxes for the 1991 tax year, separate protests against the assessments were filed and denied. Union appealed to the district court each 1991 assessment. After the appeals were consolidated, Union moved *for summary judgment*. Though represented by the district attorney's office, the Board *failed to respond* and on June 10, 1992 a nisi prius judgment went to Union. The trial judge's

1. *"Judgment roll" is synonymous with "common-law record" and the court's "record proper". See Messenger v. Messenger,* Okl., 827 P.2d 865, 870 n. 20 (1992); *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 n. 10 (1984); *Mid–Continent Pipe Line Co. v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 (1944). It includes the petition, process, return, all subsequent pleadings, reports, verdicts, orders, judgments, and all material acts and proceedings of the court. *See* 12 O.S.1991 § 32.1; *see also Pettis v. Johnston,* 78 Okl. 277, 190 P. 681, 700 (1920).

The judgment roll's *statutory* definition has remained the same for over 100 years. For an extensive discussion of the judgment roll, its history, and its elements, see A. Freeman, A Treatise of the Law of Judgments §§ 175–193 (5th ed. 1925).

handwritten memorial entered upon the journal of the case sets out:

"π [plaintiff's] M/S [motion for summary judgment] presented and argued in C91–132 and 138 by Brian Peterson; ▲ [defendant] by Charles Calloway, Asst. D.A. orally responded that certificate of mailing went to DA in Sayre and not to him in Mangum, and was received by DA 2 days prior to response time. No response to M/S having been filed or extension of time requested by State through D.A. even though M/S on file for 42 days. *Motion deemed confessed* and S/J granted π in both cases.

/s/ Charles L. Goodwin"

[Emphasis mine.]

When the Beckham County Assessor replaced the Bruner gas plant on the 1993 tax rolls, Union once again protested. Denied the relief sought, it then appealed to the district court. There, Union asserted that its earlier 1992 judgment barred from relitigation the gas plant's taxability for *later* tax years *unless* a change in operation, value or condition of its property were shown.[2] The trial court ruled the Board "estopped" by issue preclusion and gave judgment to Union on March 23, 1994.[3]

The Board appealed and the Court of Appeals reversed Union's judgment ruling that the earlier (1992) judgment was not fit for issue preclusion. Union's certiorari quest followed.

## B

## THE PARAMETERS OF THE 1992 JUDGMENT

A motion for summary judgment tenders the case for adjudication upon application of the law to uncontroverted facts which, on *all material issues*, support but a *single* inference in favor of the movant.[4] A party's failure to respond *does not* result in a *confession of judgment*, but in the *admission* of all undisputed material facts in the movant's statement *which are supported by admissible material*.[5] *Spirgis v. Circle K Stores, Inc.*[6] requires—as a predicate for summary judgment—that the nisi prius judge examine the evidentiary material on file to determine (1) that the movant's materials show no substantial controversy as to the material facts and (2) that these facts can be supported by *admissible evidence*.[7]

The judgment roll in the 1992 action clearly demonstrates that the trial judge viewed the Board's failure to respond as its "confession" of judgment.[8] His decisional process is hence inconsistent with the *Spirgis*-commanded affirmative duty to review and assay the sufficiency of materials tendered in summary-judgment process.[9]

---

**2.** The Board concedes that there have been no changes in the operation, value or condition of Union's gas plant since the 1991 tax year. *See* Board's "Answer in Opposition to the Petition for Certiorari", p. 3. Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. *Reeves v. Agee*, Okl., 769 P.2d 745, 753 (1989); *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181 (1986); *Timmons v. Royal Globe Ins. Co.*, Okl., 713 P.2d 589, 592 n. 10 (1985).

**3.** In its March 23, 1994 judgment the trial court found:

"3. The Court will treat Union's Motion as one raising estoppel by judgment of the previous case between these parties on the same issues which was *decided by confession* and from which the Board neither moved to vacate nor appeal." [Emphasis mine.]

**4.** *Hulsey v. Mid–America Preferred Ins. Co.*, Okl., 777 P.2d 932, 936 n. 15 (1989).

**5.** *Spirgis v. Circle K Stores, Inc.*, Okl., 743 P.2d 682, 684 (1987) (approved for publication by the Supreme Court).

**6.** *See Spirgis*, *supra* note 5.

**7.** *Id.* at 685.

**8.** *See supra* section IA, for the text of the trial judge's order of June 10, 1992.

**9.** A default judgment is supported either by a party's failure to defend against the claim or a party's confession of judgment. *See* Rule 4(e), Rules for District Courts of Oklahoma, 12 O.S. 1991, Ch. 2, App., which provides:

"Any party opposing a motion, except those enumerated in Section c above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days of the service of the motion, or *the motion shall be deemed confessed*." [Emphasis mine.]

## II

### THE TEST FOR DETERMINING IF AN EARLIER JUDGMENT MAY BE INTERPOSED FOR ISSUE PRECLUSION

Under the doctrine of issue preclusion (collateral estoppel),[10] once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim.[11] *The principle may not be invoked when the party against whom the earlier decision is interposed did not have a "full and fair opportunity" to litigate that issue in the previous case.*[12]

The issue preclusion bar is distinct from that of "claim preclusion" (*res judicata*). Under the latter principle, a *final* judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim but also any theories or issues that were actually decided, or could have been decided, in that action.[13]

Oklahoma's extant jurisprudence holds that *res judicata applies only to those tax proceedings which deal with the same claim for the same tax years.* When tax proceedings involve similar claims *for different tax years,* issue preclusion (collateral estoppel) is applicable.[14] Issue preclusion (rather than *res judicata*) is the only concept interposable here.

> Here the judgment roll in the earlier (1992) proceeding gives the appearance of a judge-imposed confession of judgment as a form of sanction against the Board for failure to respond to Union's motion for summary judgment.

**10.** *Fent v. ONG*, Okl., 898 P.2d 126, 133 (1995). *Issue preclusion* and *collateral estoppel* are two different names for the same legal doctrine. The former was introduced through the Restatement; the latter is a common-law term of long usage. RESTATEMENT OF JUDGMENTS (SECOND) § 27, Comment b; *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 n. 8 (1982); *Veiser, supra* note 1 at 799 n. 7.

**11.** *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Underside, supra* note 10 at 516–17; *Chambers v. City of Ada*, Okl., 894 P.2d 1068, 1072 n. 5 (1995); *Wilson v. Kane*, Okl., 852 P.2d 717, 722 n. 23 (1993); *Veiser, supra* note 1 at 800. *See also Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272 (10th Cir.1995).

## III

### THE JUDGMENT ROLL IN THE EARLIER PROCEEDING (FOR THE 1991 TAX YEAR) FACIALLY REVEALS THAT THERE WAS NO *FULL AND FAIR OPPORTUNITY* TO LITIGATE THE GAS PLANT'S TAXABILITY; HENCE, THE TEST FOR AVAILABILITY OF ISSUE PRECLUSION IS NOT MET

Even though the 1992 judgment satisfies the law's criteria for *res judicata* effect, it cannot qualify for issue preclusion *unless there was a full and fair opportunity to litigate the gas plant's taxability.*[15] The judgment roll in the earlier action is facially tainted by its affirmative disclosure that the decisional process—which led to the critical judgment—does not meet the *Spirgis*[16] requirement. This is so because *it facially demonstrates that the trial judge deemed judgment confessed* by the Board's failure to respond to Union's motion for summary judgment. The 1992 judgment is hence unfit for interposition as an issue preclusion bar.

## IV

### SUMMARY

The criteria for claim (*res judicata*) and issue preclusion (collateral estoppel) are not identical. The availability of the latter doctrine is conditioned upon a "full and fair

**12.** *Fent, supra* note 10 at 133; *Underside, supra* note 10 at 516; *Veiser, supra* note 1 at 800; *McCurry, supra* note 11, 449 U.S. at 95, 101 S.Ct. at 415.

**13.** *Wilson, supra* note 11 at 722; *McCurry, supra* note 11, 449 U.S. at 94, 101 S.Ct. at 414; RESTATEMENT OF JUDGMENTS, (SECOND), *supra* note 10 at 852.

**14.** *Boy Scouts of America, Inc. v. Thompson*, Okl., 380 P.2d 705, 708 (1963).

**15.** There are circumstances in which judgments that meet *res judicata* criteria are not available for issue preclusion. For example, see *Helvering v. Mitchell*, 303 U.S. 391, 397–98, 58 S.Ct. 630, 632–33, 82 L.Ed. 917 (1938); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 360–62, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984).

**16.** *See Spirgis, supra* note 5.

opportunity" to litigate the issue sought to be barred by the earlier judgment.

The 1992 judgment roll affirmatively shows that the trial judge had erroneously rested his judgment on the Board's *confession* (of judgment) by failure to respond. This facially apparent, fatal flaw makes the 1992 judgment unfit for issue preclusion. I hence dissent from today's holding.